IN THE MATTER OF THE GUARDIANSHIP OF L.S. AND H.S., MINOR WARDS.

JASON S. AND REBECCA S., APPELLANTS, v. VALLEY HOSPITAL MEDICAL CENTER AND MICHELE NICHOLS, R.N., RESPONDENTS.

No. 38242

April 6, 2004                                    87 P.3d 521

*Neeman, Mills & Palacios, Ltd.,* and *Eric O. Palacios,* Las Vegas; *Donald T. Ridley,* Pawling, New York, for Appellants.

---

[12]NCJC Canon 3B(7)(a) (stating that ''[w]here circumstances require, ex parte communications for . . . emergencies . . . are authorized'').

*Earley Savage* and *Nancy D. Savage* and *Kenneth M. Webster,* Las Vegas, for Respondents.

*Jerry H. Mowbray,* Reno, for Amicus Curiae Christian Congregation of Jehovah's Witnesses.

# OPINION

*Per Curiam:*

This is an appeal from a district court order appointing respondents, Valley Hospital Medical Center and Michele Nichols, R.N., Administrator for Valley Hospital (collectively, Valley Hospital), as temporary guardians of the minor child H.S. Appellants Jason S. and Rebecca S., H.S.'s natural parents, appeal, arguing that the district court erred when it appointed Valley Hospital temporary guardian of H.S. pursuant to NRS 159.052. We disagree. We conclude that when the parents refused to consent to medically necessary care for H.S. based on their religious convictions, the district court did not abuse its discretion in appointing Valley Hospital as a temporary guardian to make decisions to provide medically necessary, life-saving treatment for H.S.

## FACTS

Identical twin boys, H.S. and L.S., were prematurely born on June 11, 2001, at Valley Hospital, to Jason and Rebecca. Prior to the birth, Rebecca had been hospitalized due to twin-to-twin transfusion syndrome, a condition in which the babies' circulatory systems were joined at the placenta, causing blood volume to be preferentially directed to one twin, L.S., and causing the other twin, H.S., to be anemic. To alleviate H.S.'s anemic condition, doctors massaged the umbilical cord, directing blood toward H.S., thereby naturally transfusing H.S. with blood. Although H.S. was stillborn, doctors successfully revived him seven minutes after birth. Despite a normal blood platelet count, H.S. remained critically ill, requiring a ventilator to assist his breathing and medications to help his circulation and heartbeat. Because of H.S.'s chronic anemic state prior to birth, physicians monitored his blood platelet count over the next few days. The hospital was also aware that, consistent with their religious beliefs as Jehovah's Witnesses, Jason and Rebecca objected to the administration of blood transfusions to their twin boys.

On June 17, 2001, H.S.'s blood platelet count had dropped to such a degree that the attending physician, Dr. Martha Knutsen, felt that H.S.'s life was in jeopardy if a transfusion was not immediately performed. Furthermore, a medical alternative to blood transfusion was not available. Without parental consent, Dr. Knutsen transfused H.S. with blood platelets. Despite the transfusion, H.S.'s condition remained critical.

On Monday, June 18, 2001, Valley Hospital petitioned the Eighth Judicial District Court, ex parte, for temporary guardian-

ship of both H.S. and L.S., pursuant to NRS 159.052.[2] The petition was based on "the substantial and immediate risk of physical harm, potential death, and the emergency circumstances surrounding the health and well being" of both children and requested a "special" guardianship to "provide for the medical care of the twin children."[3] An attached affidavit of Dr. Barry Perlin stated that a significant probability existed that H.S. and L.S. would require a blood transfusion within the next thirty days to survive. Furthermore, if a transfusion were needed, the transfusion would need to be initiated in less than two hours after the emergency arose.

On Monday afternoon, June 18, 2001, the district court granted temporary guardianship on an emergency basis for the purpose of consenting to blood transfusions and to other medical care as deemed necessary by the hospital for both children. The order required that Jason and Rebecca be given notice "as soon as practical." The district court also set a hearing for the next morning at 8:45 a.m. and ordered that Jason and Rebecca receive notice of the hearing by 7:00 p.m. that evening, June 18. The parents received notice that afternoon.

On June 19, 2001, Jason and Rebecca appeared in proper person at the hearing. Jason expressed a concern that, while Valley Hospital was accusing him and his wife of medically neglecting their children, no investigation was being conducted, and that neither the State nor Child Protective Services was present. The district court, concerned with the children's health, continued the hearing to Wednesday afternoon, June 20, 2001, so that medical experts could be obtained and Jason and Rebecca could obtain counsel.

On June 20, 2001, Jason and Rebecca appeared with counsel. At the hearing, Dr. Knutsen testified concerning H.S.'s critical condition and his continued need for medical attention, with the real probability that he was at risk for immediate medical intervention, including blood transfusions. Jason and Rebecca argued that H.S.'s condition was stable and that an immediate medical emergency did not exist. The parents also reiterated their concern that Valley Hospital should have brought a petition under NRS Chapter 432B (Protection of Children from Abuse and Neglect). The district court responded that NRS 159.052 was less intrusive for the par-

---

[2]In its petition, Valley Hospital applied for temporary guardianship pursuant to NRS 159.052 and guardianship pursuant to NRS 159.044. To the extent that the district court relied on facts supporting an order under NRS 159.044, we find this error harmless.

[3]"Special guardianship" refers to a "guardian of a person of limited capacity," NRS 159.026, and it is inapplicable here, see NRS 159.022 (defining "limited capacity"). However, because the error does not affect the substantial rights of the parties or the outcome of this decision, the error is harmless.

ents, and that NRS Chapter 432B would not necessarily provide additional protections. Furthermore, the district court reasoned that when an emergency presented itself, there would not be time to obtain a court order. The district court's final order ratified the blood transfusion given to H.S. on June 17, 2001, and extended the temporary guardianship as to H.S. only and for "the limited purpose of providing consent for the administration of blood and/or blood products" for thirty days. The district court further ordered that H.S. was not to be removed from Valley Hospital without the hospital's consent. Barring any unforeseen events, L.S. would not likely require a blood transfusion, and therefore, the district court did not extend the temporary guardianship to him.[4]

Jason and Rebecca timely filed a notice of appeal of the district court's final order concerning Valley Hospital's temporary guardianship of H.S.

## DISCUSSION

### Evaluating review

Generally, this court refuses to determine "questions presented in purely moot cases."[5] We have stated that "the duty of every judicial tribunal is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles of law which cannot affect the matter in issue before it."[6] However, where an issue is capable of repetition, yet will evade review because of the nature of its timing, we will not treat the issue as moot.[7]

The United States Supreme Court has recognized the applicability of the capable-of-repetition-yet-evading-review doctrine " 'only in exceptional situations.' "[8] The challenged action must be too short in its duration to be fully litigated prior to its natural expiration, and a reasonable expectation must exist that the same complaining party will suffer the harm again.[9]

---

[4]While the ex parte order concerned both H.S. and L.S., in its final order extending temporary guardianship to Valley Hospital, the district court did not extend guardianship protection to L.S. Because the final order forms the basis for this appeal, no controversy exists concerning guardianship over L.S., and the issue is moot.

[5]*NCAA v. University of Nevada,* 97 Nev. 56, 58, 624 P.2d 10, 11 (1981).

[6]*Id.* at 57, 624 P.2d at 10.

[7]*See State v. Washoe Co. Public Defender,* 105 Nev. 299, 301, 775 P.2d 217, 218 (1989).

[8]*Spencer v. Kemna,* 523 U.S. 1, 17 (1998) (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983)).

[9]*Id.*; *see Washington v. Harper,* 494 U.S. 210, 219 (1990) (noting that the injured party would likely be subjected to medications in the future); *Honig v.*

Temporary guardianships and medical emergencies are typically of short duration. Both will expire prior to the issues being fully litigated. That Jason and Rebecca or Valley Hospital will be confronted with the same issue or injury again is an entirely reasonable prospect. Given the temporary nature of the situation, the alleged injury will continue to evade review if we do not address the issue here. We therefore conclude that the issues presented here are capable of repetition, yet evade review, and so are within the exception to the mootness doctrine.

### Nevada's temporary guardianship statute

Jason and Rebecca argue that the district court erred when it granted temporary guardianship of H.S. to Valley Hospital under NRS 159.052, and that the circumstances in the instant case are more appropriately addressed under NRS Chapter 432B. The parents argue that, when a child requires necessary medical treatment and the parents oppose the treatment, the hospital must contact the state to initiate an investigation under NRS Chapter 432B. NRS Chapter 432B, however, is aimed at protecting children from abuse and neglect.[10] A child is neglected if he lacks necessary medical care because of the parents' neglect or refusal to provide medical care when able to do so.[11]

Jason and Rebecca also argue that NRS Chapter 432B should be the only applicable statute, under the present circumstances, as it provides greater protection to parents since it requires investigation, notice, a hearing and appointed counsel. NRS Chapter 432B, while being much more intrusive than the process involving appointment of a temporary guardian, does not provide any offsetting additional protections in the circumstances of this case. Pursuant to NRS 432B.260(2), if the child is under five years of age or there is a high risk of serious harm to the child, the state must conduct an investigation.[12] NRS 432B.390 permits the state to place the child in protective custody without parental consent and only thereafter notify the parents that the child is in protective custody.

*Doe,* 484 U.S. 305, 318 (1988) (requiring a ''reasonable likelihood'' that the injured party would suffer the same harm again); *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 398 (1980) (requiring that the litigant face ''some likelihood of becoming involved in the same controversy in the future'').

[10]*See* NRS 432B.220; NRS 432B.020; NRS 432B.140. Unless otherwise noted, the 2003 session of the Nevada Legislature made no significant changes to the statute.

[11]NRS 432B.140; NRS 432B.330(2)(b)(3).

[12]The state may investigate whether there is reasonable cause to believe the child is neglected or threatened with neglect, the effect of such neglect and what services or treatments are necessary to prevent further neglect. NRS 432B.300.

Notice is required, and a hearing must be held within seventy-two hours after a child is taken into custody.[13] The court then determines whether it is contrary to the child's welfare for the child to remain in the home or if it is in the child's best interest to remain outside of the home.[14]

Valley Hospital initially submitted a petition for guardianship under both NRS 159.052, the temporary guardianship statute, and NRS 159.044, the general guardianship statute. Because Valley Hospital sought only temporary guardianship of H.S., we conclude that the district court did not err in applying NRS 159.052. Absent a showing of abuse, we will not disturb the district court's exercise of discretion concerning guardianship determinations.[15] However, we must " 'be satisfied that the district court's decision was based upon appropriate reasons.' "[16]

A temporary guardian may be appointed for ten days if the district court "[f]inds reasonable cause to believe that the proposed ward is unable to respond to a substantial and immediate risk of physical harm or to a need for immediate medical attention."[17] NRS 159.052(2)(b) requires that the district court be "satisfied that the petitioner has tried in good faith to notify [the parents] . . . or that giving notice to those persons is not feasible under the circumstances, or determines that such notice is not required" because of exposure to an immediate risk of harm if notice was provided. If the court determines that advance notice is not required, the petitioner must notify the parents without undue delay, but within forty-eight hours after the appointment.[18] Within ten days of the appointment, the court must hold a hearing to determine whether to extend the temporary guardianship.[19] If the petitioner demonstrates by clear and convincing evidence that the minor is "unable to respond to a substantial and immediate risk of physical harm or to a need for immediate medical attention," the court may extend the temporary guardianship for up to thirty

---

[13]NRS 432B.470. Unlike NRS 159.052, there are no exceptions to the notice requirement. However, in circumstances where the child is in imminent danger, as determined by child welfare services, the child has already been taken into custody without the parents' consent.

[14]NRS 432B.480(1)(b).

[15]*See Matter of Guardianship & Estate of D.R.G.,* 119 Nev. 32, 37, 62 P.3d 1127, 1130 (2003).

[16]*Id.* (quoting *Locklin v. Duka,* 112 Nev. 1489, 1493, 929 P.2d 930, 933 (1996)).

[17]NRS 159.052(2)(a).

[18]NRS 159.052(4).

[19]NRS 159.052(5).

days.[20] The temporary guardianship is limited to those powers necessary to respond to the risks involved.[21]

While NRS 159.052 provides exceptions to giving immediate notice, the exceptions and the discretion given to a district court to determine whether to appoint a guardian are congruent with the spirit of the statute in providing protection to a minor in need of immediate care. Here, if the district court had denied the petition for guardianship based on lack of notice, the child may have been exposed to a substantial risk of harm; upon receiving notice, the parents could have attempted to remove the child from the hospital prior to the appointment, thereby further endangering the child's life. The evidence presented to the district court in the form of an affidavit from a Valley Hospital physician stated that the parents were refusing medically necessary blood transfusions, that H.S. would require blood transfusions to survive and that H.S. was unable to respond to this risk. The district court reasonably concluded from this information that H.S. was at a risk of substantial and immediate physical harm. The district court's decision to appoint a temporary guardian, ex parte, was based on the child's best interest, and protected the State's interest in the welfare of children within this state. To prevent further intrusion into the parent's lives, however, the district court required that Jason and Rebecca receive notice within six hours of the order's entry and ordered a hearing be held within less than twenty-four hours.

To further protect the rights of the children and the parents, the district court scheduled an additional hearing the next day to allow Jason and Rebecca to obtain counsel and to hear expert medical testimony. At the hearing, Dr. Knutsen testified that there was a "real possibility" of complications arising in the next thirty days that would require a blood transfusion. Dr. Knutsen also testified that H.S.'s condition was critical and that, in the next thirty days, several complications were foreseeable, including intracranial bleeding, infections, and the possibility that subsequent operations might be required, all of which would require blood transfusions. Based on the parents' religious convictions, they were unable to adequately respond to this harm.

Valley Hospital did not allege that Jason and Rebecca were neglecting or abusing H.S., and the district court determined that there was no evidence of neglect or abuse. The district court reasoned that an investigation into possible neglect by Jason and Rebecca of their children, which NRS Chapter 432B requires, would have intruded unnecessarily into their personal lives. We agree. Reporting Jason and Rebecca to Child Protective Services or law enforcement, and initiating an investigation into their decisions

---

[20]*Id.*

[21]NRS 159.052(6).

regarding the care, custody and management of their children, would have exceeded the district court's discretion in light of the fact that the only issue was Jason and Rebecca's inability to consent to blood transfusions for their minor son based upon religion. H.S. did not need protection from his parents; instead, he needed someone to implement a course of necessary medical intervention that Jason and Rebecca were unable to approve because of their religious convictions. Moreover, in an emergency situation such as this, NRS Chapter 432B would have provided no additional safeguards for the parents.[22]

In the midst of an emergency, the district court was confronted with the task of balancing the competing interests of the child, the parents, the hospital and the State. Throughout the proceedings, the district court took numerous steps to protect the interests of the child and the parents, including requiring notice and a hearing within twenty-four hours after the original order, allowing Jason and Rebecca time to obtain counsel prior to reaching a final determination, protecting Jason and Rebecca's privacy interests, requiring the hospital to provide medical testimony regarding H.S.'s condition and limiting the final order to only those powers necessary to protect H.S.'s interests. We therefore conclude that the district court did not abuse its discretion when it awarded Valley Hospital temporary guardianship of H.S. pursuant to NRS 159.052. We do not perceive the provisions of NRS 159.052 as governing exclusively in cases involving minors and medical emergencies.

### Substantive due process

Other jurisdictions have uniformly held that when medical treatment is available and necessary to save a minor's life, the state may intervene.[23] Jason and Rebecca concede that the parents' right to the care, custody and control of their children is not absolute.

---

[22]See NRS 432B.390; NRS 432B.330; NRS 432B.470. While both NRS Chapter 432B and NRS Chapter 159 recognize that the needs and rights of the child may outweigh the parents' right to notice in certain circumstances, NRS Chapter 432B does not provide judicial review prior to the state initiating an investigation or taking the child into protective custody. A hearing is provided only afterward. See NRS 432B.390; NRS 432B.470(1).

[23]See Novak v. Cobb County-Kennestone Hosp. Authority, 849 F. Supp. 1559, 1566-67 (N.D. Ga. 1994); Newmark v. Williams, 588 A.2d 1108, 1116 (Del. 1991); People v. Labrenz, 104 N.E.2d 769, 773-74 (Ill. 1952); Matter of McCauley, 565 N.E.2d 411 (Mass. 1991); Matter of Sampson, 278 N.E.2d 918, 919 (N.Y. 1972); Matter of Cabrera, 552 A.2d 1114, 1118 (Pa. Super. Ct. 1989); O.G. v. Baum, 790 S.W.2d 839, 841 (Tex. Ct. App. 1990). But see In re Green, 292 A.2d 387, 392 (Pa. 1972) (holding that, as between a parent and the state, the state's interest did not outweigh a parent's religious beliefs opposing medical treatment when the child's life was not immediately at risk).

However, because the issue of a state's right to compel the administration of a blood transfusion to a minor when the parents oppose the treatment is an issue of first impression in Nevada, we will address it here.[24]

" 'Substantive due process guarantees that no person shall be deprived of life, liberty or property for arbitrary reasons.' "[25] The Due Process Clause of the Fourteenth Amendment protects those liberty interests that are deemed fundamental and are "deeply rooted in this Nation's history and tradition."[26] Certain family privacy rights, including the parent-child relationship, have therefore been recognized as fundamental rights.[27] We have adopted a "reasonableness test" to address family privacy cases involving "competing interests within the family."[28] This test " 'implicitly calibrat[es] the level of scrutiny in each case to match the particular degree of intrusion upon the parents' interests.' "[29]

While a parent has a fundamental liberty interest in the "care, custody, and management" of his child, that interest is not absolute.[30] "The state also has an interest in the welfare of children and may limit parental authority," even permanently depriving parents of their children.[31] Therefore, while Jason and Rebecca have a parental interest in the care of their son, the State has an in-

---

[24]This issue was not raised in the district court. However, because this appeal raises an important constitutional issue, we will address it sua sponte. *See Kirkpatrick v. Dist. Ct.,* 119 Nev. 66, 70 n.8, 64 P.3d 1056, 1059 n.8 (2003). On appeal, the parties also raised the issue of the hospital's standing to petition for guardianship. However, because the parents failed to raise the issue below and are not attacking the constitutionality of NRS 159.052, we need not consider this argument. *See Diamond Enters., Inc. v. Lau,* 113 Nev. 1376, 1378, 951 P.2d 73, 74 (1997).

[25]*Arnesano v. State, Dep't Transp.,* 113 Nev. 815, 819, 942 P.2d 139, 142 (1997) (quoting *Allen v. State, Pub. Emp. Ret. Bd.,* 100 Nev. 130, 134, 676 P.2d 792, 794 (1984)); *see* Nev. Const. art. 1, § 8(5).

[26]*Moore v. East Cleveland,* 431 U.S. 494, 503 (1977).

[27]*Matter of Parental Rights as to J.L.N.,* 118 Nev. 621, 625, 55 P.3d 955, 958 (2002).

[28]*Kirkpatrick,* 119 Nev. at 74, 64 P.3d at 1062 (noting that "[v]arious child rearing and custody cases" should be addressed under a reasonableness test).

[29]*Id.* (quoting David D. Meyer, *The Paradox of Family Privacy,* 53 Vand. L. Rev. 527, 546 (2000)).

[30]*Id.* at 71, 64 P.3d at 1059.

[31]*Id.*

terest in preserving the child's life. As H.S. is unable to make decisions for himself, the State's interest is heightened. Jason and Rebecca's liberty interest in practicing their religion must also give way to the child's welfare.[32] Hence, the district court found that Jason and Rebecca's refusal to consent to treatment put H.S.'s life at substantial risk. Additionally, the State has an interest in protecting "the ethical integrity of the medical profession," and in allowing hospitals the full opportunity to care for patients under their control,[33] especially when medical science is available to save that patient's life.

Here, the child's interest in self-preservation and the State's interests in protecting the welfare of children and the integrity of medical care outweigh the parents' interests in the care, custody and management of their children, and their religious freedom. The combined weight of the interests of the child and the State are great and, therefore, mandate interference with Jason and Rebecca's parental rights.

NRS 159.052 strikes an appropriate balance between the various interests. The statute creates temporary measures, which are limited to those powers necessary to respond to the risk of harm. Additionally, the statute protects the child's interest and allows the State to protect its interest with minimal interference into the parents' lives. Accordingly, we hold that a parent's substantive due process rights are not violated when the district court awards temporary guardianship of a minor child to a hospital pursuant to NRS 159.052.

For the foregoing reasons, we affirm the order of the district court appointing Valley Hospital as temporary guardian of minor child H.S.

---

[32]*See Prince v. Massachusetts,* 321 U.S. 158, 166-67 (1944) (noting that "[t]he right to practice religion freely does not include liberty to expose the . . . child to . . . ill health or death").

[33]*McCauley,* 565 N.E.2d at 414.