137 Nev., Advance Opinion 27

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE GUARDIANSHIP OF THE PERSON AND ESTATE OF IDA RUBIN, AN ADULT PROTECTED PERSON. | No. 80300 |

JASON RUBIN,
Appellant,
vs.
IDA RUBIN; AND MARK RUBIN,
Respondents.

**FILED**

JUL 01 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a guardianship petition. Eighth Judicial District Court, Family Division, Clark County; Linda Marquis, Judge.

*Affirmed.*

Solomon Dwiggins & Freer, Ltd., and Alan D. Freer, Mark A. Solomon, and Ross E. Evans, Las Vegas,
for Appellant.

Hutchison & Steffen, PLLC, and Michael K. Wall, Las Vegas,
for Respondent Ida Rubin.

Grant Morris Dodds, PLLC, and Jason M. Aivaz, Henderson,
for Respondent Mark Rubin.

21-18900

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HARDESTY, C.J.:

NRS 159.044(2)(i)(1) provides that a petition for adult guardianship must include a certificate from a physician or a qualified individual demonstrating need for a guardianship. We conclude that this certificate is required for the district court to consider the petition but the certificate does not need to be based on an in-person examination of the proposed protected person. Furthermore, whether the petition and certificate warrant the need for a guardianship or further proceedings is within the sound discretion of the district court. In this case, we conclude that although the district court relied on the wrong reasoning, the district court ultimately did not abuse its discretion when it dismissed the guardianship petition because the petition did not demonstrate that the proposed protected person was incapacitated.

*FACTS AND PROCEDURAL HISTORY*

Appellant Jason Rubin filed a petition for appointment of temporary guardian and to establish a general permanent guardianship over his mother, respondent Ida Rubin.[1] Jason's petition requested a guardianship over Ida's estate and her person.[2] In his petition, Jason

---

[1]Jason and his wife jointly requested a guardianship over Ida; however, only Jason filed a notice of appeal. Thus, we only refer to Jason in this appeal.

[2]Jason has not alleged any financial harm to warrant a guardianship over Ida's estate, and Jason's counsel acknowledged at oral argument that

alleged that Ida suffered from paranoid schizophrenia and that her mental health was declining. Jason attached to his petition call logs from the Las Vegas Metropolitan Police Department (LVMPD), as well as incident reports from the security team at Ida's residence, Securitas USA, which detailed events where Ida would ask the officers to perform nonsensical acts.[3] Ida objected to Jason's petition for guardianship, attesting that she was "competent enough to handle [her] own medical and financial affairs." Respondent Mark Rubin, Ida's son and Jason's brother, joined Ida's objection to Jason's petition for guardianship. The district court held a hearing and denied the petition without prejudice, finding that under NRS 159.044(2)(i)(1) a guardianship over an adult proposed protected person cannot be granted without a physician's certificate. The district court ordered that Jason could refile the petition if he was able to obtain a physician's certificate.

Thereafter, Jason filed a "Petition for Rehearing and Reconsideration of Petition for Appointment of Guardians of the Person and Estate of Ida Rubin." The petition for rehearing incorporated the first guardianship petition, alleging the same facts, but it also included a physician's certificate prepared by Dr. Gregory P. Brown. Dr. Brown

---

the guardianship petition only concerned Ida's person. Thus, we only address the guardianship petition over Ida's person, not her estate.

[3]Some of these acts included "check[ing] her home for drugs; . . . speak[ing] with golfers near hole #12 who she feels [are the Los Angeles Police Department (LAPD)]"; . . . to conduct a perimeter check due to LAPD being on her property; [and] to assist with overhead flying planes which she alleges [are] burning her face." Securitas USA also reported that Ida stole a golf flag from the twelfth hole, approached golfers, and started yelling at them.

reviewed the LVMPD's call logs, the original petition for appointment of guardianship, and email correspondence from Securitas USA to make his evaluation. Dr. Brown did not personally evaluate Ida. However, based upon his review of the information provided to him, Dr. Brown opined in the certificate that the "series of events [reviewed] . . . strongly suggest[s] the presence of psychosis [a substantial break in the perception of consensual reality]." (Third alteration in original.) Dr. Brown further stated that he believed that Ida's "delusional beliefs . . . placed her at risk of harm [either to self or others]." (Alteration in original.) Dr. Brown recommended that Ida "receive a complete neurological evaluation and a complete psychiatric evaluation to assess her mental functioning and possible need for treatment . . . [, which] could also provide further data to support [a] need for [a] guardianship."

At a hearing on the rehearing petition, the district court entertained arguments from both parties' counsel, but no evidence was offered or admitted. Despite the physician's certificate, the district court denied the petition and did not appoint a guardian over Ida or her estate. The district court reasoned that the physician's certificate Jason attached to his petition for rehearing was insufficient because it "was based on hearsay and double hearsay" and "was made without having seen [Ida]." The district court also found that, although "there is a concern for [Ida]'s well being and safety, . . . [the] guardianship may not be necessary because there are less restrictive means in place," referring to the fact that Mark is listed as Ida's attorney-in-fact in her power of attorney. In declining to reconsider the guardianship petition, the district court ordered that it would "not open discovery or require a[ medical] evaluation of . . . I[da] . . . as it is an inappropriate shifting of the burden." Jason appealed.

## DISCUSSION

*This court has jurisdiction over the appeal*

As an initial matter, we must decide whether Jason's appeal was timely filed. Ida argues that the district court's first order, which denied the guardianship petition, was the final, appealable judgment. Because Jason filed an appeal only from the district court's second order, which denied the rehearing petition, Ida contends that his appeal was untimely filed. Conversely, Jason argues that the first order denying his petition for guardianship was not a final order and was therefore not appealable.

We conclude that the district court's first order essentially dismissed the guardianship petition with leave to amend, making it an interlocutory, nonappealable order. *See Bergenfield v. BAC Home Loans Servicing, LP*, 131 Nev. 683, 685, 354 P.3d 1282, 1284 (2015) (holding that "a district court order dismissing a complaint with leave to amend is not final and appealable"). At the guardianship petition hearing, Jason asked the district court if it could give him time to obtain a physician's certificate before dismissing the petition. The district court responded that it was not dismissing the petition, but rather, was denying it until Jason could refile with a physician's certificate. The written order expressly stated that the denial was without prejudice and Jason could refile the petition if he obtained a physician's certificate. Although the district court did not explicitly characterize its order as one allowing leave to amend, it can be implied from the effect of the order and from the district court's reasoning at the hearing on the guardianship petition. *See id.* at 684, 354 P.3d at 1283 (stating that "[t]his court determines the finality of an order or judgment by looking to what the order or judgment actually *does*, not what it is called"

SUPREME COURT
OF
NEVADA

(O) 1947A

(internal quotation marks omitted)). This makes the first order an interlocutory order that is not appealable.

By contrast, the order on rehearing disposed of all the issues in the case and left nothing for the district court to consider in the future. *See Barbara Ann Hollier Tr. v. Shack*, 131 Nev. 582, 590, 356 P.3d 1085, 1090 (2015) (stating that "a final judgment is one that disposes of all the issues presented in the case, and leaves nothing for the future consideration of the court, except for post-judgment issues such as attorney[ ] fees and costs" (internal quotation marks omitted)). The fact that Jason misnamed his amended petition as a "[p]etition for [r]ehearing and [r]econsideration" is of no consequence because it was, in effect, an amended petition that incorporated the first petition and also included a physician's certificate. *See Bergenfield*, 131 Nev. at 684, 354 P.3d at 1283. Therefore, we conclude that we have jurisdiction over this appeal because Jason timely filed a notice of appeal from the district court's final order.[4] NRAP 3A(b)(1).

*The district court did not abuse its discretion by denying the guardianship petition*

Jason argues that the district court erred when it concluded that a physician's certificate is required for a guardianship petition. And, he argues, even if one is required, the district court erred in finding that his physician's certificate was insufficient. Additionally, Jason argues that the district court erred when it denied the petition without allowing discovery or holding an evidentiary hearing.

---

[4]NRS 159.375 enumerates certain guardianship orders that are appealable. However, none of the enumerated provisions include an appeal from an order denying a petition for guardianship. Because we review such an order as a final adjudication of the petition, we rely on the more general grant of authority to appeal final judgments set forth in NRAP 3A(b)(1).

SUPREME COURT
OF
NEVADA

(O) 1947A

"Absent a showing of abuse, we will not disturb the district court's exercise of discretion concerning guardianship determinations. However, we must be satisfied that the district court's decision was based upon appropriate reasons." *In re Guardianship of L.S. & H.S.*, 120 Nev. 157, 163, 87 P.3d 521, 525 (2004) (footnote omitted) (internal quotation marks omitted). Moreover, "[t]his court reviews questions of statutory construction de novo." *Chur v. Eighth Judicial Dist. Court*, 136 Nev. 68, 71, 458 P.3d 336, 339 (2020). "If the plain meaning of a statute is clear on its face, then [this court] will not go beyond the language of the statute to determine its meaning." *Id.* (alteration in original) (internal quotation marks omitted).

The statute at issue here, NRS 159.044, sets forth the requirements for a guardianship petition. NRS 159.044(2) provides that "*[t]o the extent the petitioner knows or reasonably may ascertain or obtain, the* petition *must include, without limitation*" certain information and documents. (Emphasis added.) Such information and documents include "[a] certificate signed by a physician" or other qualified person that states (1) "[t]he need for a guardian;" (2) "[w]hether the proposed protected person presents a danger to himself or herself or others;" (3) "[w]hether the attendance of the proposed protected person at a hearing would be detrimental to the proposed protected person;" (4) "[w]hether the proposed protected person would comprehend the reason for a hearing or contribute to the proceeding; and" (5) "[w]hether the proposed protected person is capable of living independently with or without assistance." NRS

159.044(2)(i)(1)(I)-(V).[5] NRS 159.044(2)'s use of "must" makes it clear that a certificate is required for a guardianship petition. *See Must, A Dictionary of Modern Legal Usage* (Bryan A Garner, ed., 2d ed. 1995) (defining "must" as "a strong *ought . . .* or an absolute requirement"). The qualifying language in the statute relates to the content in the certificate not whether the certificate must be provided. Thus, the district court did not err in requiring that Jason include a certificate with his guardianship petition.

It appears, however, that the district court found the physician's certificate insufficient to satisfy NRS 159.044(2)(i)(1)'s requirements. Specifically, the district court found that the physician's certificate was based on hearsay and was produced without conducting an in-person evaluation of the proposed protected person. We conclude that this was error. First, experts may, and commonly do, rely on hearsay when making expert opinions. *See* NRS 50.285(2) (providing that experts may rely on "facts or data [that are] not . . . admissible in evidence" so long as it is "of a type reasonably relied upon by experts in forming opinions or inferences upon the subject"). Second, while the statute specifies the subjects the certificate must address, NRS 159.044(2)(i)(1)(I)-(V), it is silent as to the basis required for the statements the certificate contains. Because the plain language of the statute does not compel an in-person physical examination of the proposed protected person, it is not appropriate for us to revise the statute to add one. *Felton v. Douglas Cty.*, 134 Nev. 34, 39 n.2, 410 P.3d 991, 996 n.2 (2018) ("[D]eclin[ing] the invitation to adopt a rule

---

[5]Under NRS 159.044(2)(i)(1), the certificate can be from "a physician who is licensed to practice medicine in this State or is employed by the Department of Veterans Affairs, a letter signed by any governmental agency in this State which conducts investigations or a certificate signed by any other person whom the court finds qualified."

that is absent from statutory language."). While NRS 159.044(2) states what a guardianship petition "must" contain, it recognizes the exigency that guardianship petitions can involve and that, in an appropriate case, the requirements apply only "[t]o the extent the petitioner knows or reasonably may ascertain or obtain." A certificate based on an in-person examination may in many cases be preferable or more persuasive than one based on a record review. But adding an in-person examination requirement to the requirement of a certificate from a physician or other qualified professional in every case detracts from the flexibility NRS 159.044(2) contemplates.

Although for reasons different from those given by the district court, we conclude that it reached the right result. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) (stating that "[t]his court will affirm a district court's order if [it] reached the correct result, even if for the wrong reason"). It is within the district court's sound discretion to determine whether the contents of the petition and certificate demonstrate a need for a guardianship. *See In re Guardianship of L.S. & H.S.*, 120 Nev. at 163, 87 P.3d at 525. The certificate must include the five requirements set forth in NRS 159.044(2)(i)(1)(I)-(V), as stated above. Additionally, in order for a court to grant a guardianship petition, the petitioner must demonstrate that the proposed protected person is incapacitated. *See* NRS 159.054(1) (providing that "[i]f the court finds that the proposed protected person is not incapacitated and is not in need of a guardian, the court shall dismiss the petition"). NRS 159.019 defines "incapacitated" as an individual who "is unable to receive and evaluate information or make or communicate decisions to such an extent that the person lacks the ability to meet

essential requirements for physical health, safety or self-care without appropriate assistance."

Although the allegations concerning Ida's mental health are concerning, they are not new. The record reflects that Ida has suffered from mental illness for some time but remains capable of caring for herself and handling her day-to-day activities. Notwithstanding the record, Dr. Brown declined to conclude that Ida was incapable of living independently. Further, although Dr. Brown expressed concern that Ida's mental illness may cause her to be a danger to herself or others, he provided no facts and the record does not support that Ida's safety is in jeopardy. In fact, the police call logs state that Ida is "ok but delusional" and that she is "able to care for [her]self and [that her] house was clean." Thus, the physician's certificate did not sufficiently address the requirements in NRS 159.044(2)(i)(1)(I)-(V), and Jason did not demonstrate that Ida was incapacitated as that term is defined under NRS 159.019. Accordingly, we conclude that the district court did not abuse its discretion when it found that a guardianship over Ida's person was not necessary, especially when coupled with the fact that Ida's other son Mark has a power of attorney over her.

We also conclude that, although the district court's reasoning was erroneous, it did not abuse its discretion in denying the petition without conducting discovery or holding an evidentiary hearing. While the guardianship statutes are silent on whether discovery is proper in guardianship matters, we conclude that NRCP 26 generally permits discovery but the district court has discretion to control and limit discovery. *See In re the Creation of a Comm. to Study the Creation & Admin. of Guardianships*, ADKT 507 (Order, July 22, 2016) (clarifying that the civil

SUPREME COURT
OF
NEVADA

(O) 1947A

10

procedure rules "apply in guardianship matters, unless there is a specific statute . . . regarding a procedure or practice that conflict with the NRCP"); *see also Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012) (reviewing discovery matters for an abuse of discretion). Further, a district court's decision to conduct an evidentiary hearing in a guardianship matter is within its sound discretion. *See Berry v. State*, 131 Nev. 957, 969, 363 P.3d 1148, 1156 (2015) (providing that for habeas petitions, a district court's decision to grant or deny a petitioner's request for an evidentiary hearing is discretionary); *see also Rooney v. Rooney*, 109 Nev. 540, 542, 853 P.2d 123, 124 (1993) (in the context of child custody proceedings, "a district court has the *discretion* to deny a motion to modify custody without holding a hearing unless the moving party demonstrates *adequate cause* for holding a hearing" (emphases added) (internal quotation marks omitted)).

Here, the district court declined to order discovery, reasoning that it would be "an inappropriate shifting of the burden." This statement was erroneous. Requiring the parties to submit to discovery does not shift the burden of proof on the petitioner to show by clear and convincing evidence that a guardianship should be ordered for the proposed protected person. NRS 159.055(1). However, we agree that further investigation and proceedings were not warranted. The record demonstrates, through Ida's affidavit and the police call logs, that Ida suffers from mental illness but not that she is unable to care for herself or is a danger to herself. Guardianships are not to be lightly granted and are not required for every individual who suffers from a mental illness. A reasonable judge could have concluded that these facts do not rise to a level that warrants further investigation. *See Leavitt v. Siems*, 130 Nev. 503, 509, 330 P.3d 1, 5 (2014) (providing that

SUPREME COURT
OF
NEVADA

(O) 1947A

"[a]n abuse of discretion occurs when no reasonable judge could reach a similar conclusion under the same circumstances"). Given these circumstances, we cannot conclude that the district court abused its discretion in denying the petition without ordering discovery or holding an evidentiary hearing.

For the reasons stated above, we affirm the district court's order.

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering

_____, J.
Herndon