137 Nev., Advance Opinion 84

# IN THE SUPREME COURT OF THE STATE OF NEVADA

A CAB, LLC; AND A CAB SERIES, LLC,
Appellants,
vs.
MICHAEL MURRAY; AND MICHAEL
RENO, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,
Respondents.

No. 77050



FILED

DEC 30 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a summary judgment and post-judgment orders in a minimum wage class action. Eighth Judicial District Court, Clark County; Kenneth C. Cory, Judge.

*Affirmed in part, reversed in part, and remanded.*

Hutchison & Steffen, PLLC, and Michael K. Wall, Las Vegas; Rodriguez Law Offices, P.C., and Esther Rodriguez, Las Vegas,
for Appellants.

Leon Greenberg Professional Corporation and Leon Greenberg, Las Vegas,
for Respondents.

_____

BEFORE THE SUPREME COURT, EN BANC.[1]

_____

[1]The Honorable Kristina Pickering, Justice, voluntarily recused herself from participation in the decision of this matter.

21-37158

*OPINION*

By the Court, STIGLICH, J.:

Under the Minimum Wage Act (MWA) of the Nevada Constitution, employers are required to pay their employees minimum wage and to annually notify employees of the minimum wage rate. Employers are also statutorily required to maintain records of wages and hours worked by employees and to readily provide that information to employees upon request.

Respondents Michael Murray and Michael Reno, the named representatives in this class action, were taxi drivers who brought suit against their former employer, appellants A Cab, LLC, and A Cab Series, LLC (collectively A Cab),[2] and its owner, alleging A Cab failed to pay them minimum wage. The district court severed the claims against A Cab's owner, Creighton Nady, and entered summary judgment for the drivers. A Cab appeals from the summary judgment, challenging certain interlocutory orders as well, and from several post-judgment orders.

We affirm in part, reverse in part, and remand. We must first consider subject matter jurisdiction, and after doing so, we conclude this matter was properly in front of the district court because plaintiffs in a class action may aggregate damages for jurisdiction. Accordingly, we overrule *Castillo v. United Federal Credit Union*, 134 Nev. 13, 409 P.3d 54 (2018), to the extent that it held to the contrary.

---

[2]As discussed in this opinion, the parties strongly disagree as to whether "A Cab, LLC," and "A Cab Series, LLC," are separate entities or one and the same. Given the judgment appealed to this court lists them separately, we do so as well here.

 

For the reasons discussed in this opinion, we further conclude that (1) the district court erred in tolling the statute of limitations because it incorrectly interpreted the MWA notice requirement, (2) damages were reasonably calculated using approximation evidence, (3) claims against A Cab, LLC's owner were properly severed, (4) the attorney fees award must be reconsidered for reasonableness, (5) the award of costs, including expert witness fees, must be reconsidered under the proper standards, (6) the judgment was properly amended to include the new name of A Cab, LLC, and (7) the district court erroneously denied a motion to quash a writ of execution without conducting an evidentiary hearing.

## BACKGROUND

In 2006, Nevada voters amended the state constitution by enacting the MWA. Nev. Const. art. 15, § 16. The MWA requires, in part, that employers pay employees the minimum wage set forth therein, as adjusted yearly. *Id.* at § 16(A). Following publication of the yearly adjustment, employers "shall provide written notification of the rate adjustments to each of [their] employees." *Id.*

Murray[3] and Reno's 2012 district court class action complaint against A Cab and its owner alleged that A Cab failed to pay drivers the minimum wage under the MWA and compensation due to former employees

---

[3]Due to a clerical error, Murray was listed as Michael *Murphy* in the caption of the original complaint, which was corrected in the first amended complaint. Although A Cab alleged below and on appeal that "Michael Murray" and "Michael Murphy" are two different men, we have been provided with no evidence to support that contention, and it appears the correct parties are involved. A district court can correct a misnomer in the caption at any time, "so long as it is not misleading." *Detwiler v. Eighth Judicial Dist. Court*, 137 Nev., Adv. Op. 18, 486 P.3d 710, 716 (2021) (internal quotation marks omitted).

under NRS 608.040.[4] The drivers sought compensatory damages, injunctive and equitable relief, and punitive damages. Although taxicab drivers were exempt from statutory minimum wage protections when the complaint was filed, in 2014, we clarified that taxicab drivers were afforded minimum wage protections under the MWA. *Thomas v. Nev. Yellow Cab Corp.*, 130 Nev. 484, 327 P.3d 518 (2014).

In 2015, A Cab offered to settle with Murray and Reno for $7,500 and $15,000, respectively, but they did not accept the offers. Also in 2015, the drivers amended their complaint to add Creighton Nady (the principal of A Cab) as a defendant. Two new claims were added specifically against Nady: one for civil conspiracy, concert of action, and liability as the alter ego of the corporate defendants; and the other for unjust enrichment. Thereafter, the district court certified the class as "all persons employed by any of the defendants as taxi drivers in the State of Nevada at any[ ]time from July 1, 2007[,] through December 31, 2015." Additionally, the district court equitably tolled the statute of limitations for drivers who were employed by A Cab on the annual minimum wage notification date because it found that A Cab did not provide proper annual notice for the minimum wage rate.

Throughout the litigation, the parties disputed what evidence should be provided to determine damages. In theory, minimum wage damages are simple to calculate: multiply the hours worked in a pay period by the applicable minimum hourly wage to calculate the minimum amount due, then subtract the actual pay received to determine whether a deficiency exists. For the time period between January 1, 2013, and

---

[4]In issuing the summary judgment, the district court dismissed the NRS 608.040 claims without prejudice.

December 31, 2015, that is what occurred. A Cab electronically provided the drivers with all relevant data points, and the damages calculations were easily performed, compiled, and submitted by the drivers to the court as proof of damages. For the period between July 1, 2007, and January 1, 2013, however, A Cab provided the information in a different format. The drivers were given data, in electronic format, for the wages paid and the number of shifts worked. A Cab failed to provide computed hours worked data, however. Instead, A Cab provided copies of the drivers' handwritten "tripsheets," which reflected the hours actually worked during each shift. Extracting the needed hours-per-shift data from these tripsheets would have required extensive (and expensive) effort.

The district court found that supplying the hours-worked information only in the form of the tripsheets constituted noncompliance with the statutory requirements for employer record-keeping. Consequently, the district court appointed a special master to calculate the hours-per-shift information from the tripsheets and ordered A Cab to pay the special master's fees. A Cab failed to meet deadlines the district court set to pay the special master, however, so the drivers proved damages for the pre-2013 time period another way. The drivers' expert calculated the average hours per shift using the data from the 2013-2015 time period and multiplied that estimated average by both the number of shifts per each pay period and the minimum wage per hour to determine the wages that should have been paid for each pay period. The amount actually paid per period was subtracted to determine the deficiency. For this period, the only *estimated* data point was the hours-per-shift. Against A Cab's objection, the district court accepted the drivers' proof of damages.

SUPREME COURT
OF
NEVADA

(O) 1947A

The district court then severed the claims against Nady and granted summary judgment against A Cab, determining that the drivers were entitled to damages for A Cab's failure to pay minimum wages. The parties engaged in lengthy post-judgment motion practice. A Cab moved to reconsider and to dismiss for lack of subject matter jurisdiction, arguing that Murray and Reno had failed to demonstrate their claims met the minimum threshold amount for district court jurisdiction under this court's decision in *Castillo v. United Federal Credit Union*, 134 Nev. 13, 16, 409 P.3d 54, 57 (2018), and that there was no longer a claim for injunctive relief. The court denied the motions to dismiss and for reconsideration, concluding it did not believe it was devoid of jurisdiction in the matter. The drivers moved to amend the judgment to include "A Cab Series, LLC," as a defendant and for costs and attorney fees. The court granted these motions. A Cab appeals the summary judgment and the post-judgment orders.

## DISCUSSION

*District courts have original jurisdiction over class actions when the aggregate amount in controversy exceeds the statutory threshold*

A Cab argues that the district court lacked subject matter jurisdiction because no individual class member sought damages in an amount that met the statutory threshold. It argues that, per this court's decision in *Castillo*, individual class members' claims may not be aggregated to establish district court jurisdiction. *See Castillo v. United Fed. Credit Union*, 134 Nev. 13, 16, 409 P.3d 54, 57 (2018). A Cab further

contends that the district court did not have jurisdiction based on the drivers' request for injunctive relief.[5]

In Nevada, justice courts have original jurisdiction over most actions seeking to recover less than a statutory amount-in-controversy threshold, which, when this action was filed in 2012, was $10,000.[6] *See* 2011 Nev. Stat., ch. 253, § 54, at 1136 (amending NRS 4.370(1) and taking effect July 1, 2011); *Castillo*, 134 Nev. at 16, 409 P.3d at 57. District courts have original jurisdiction over matters in which the amount in controversy is greater than this statutory threshold. *See* Nev. Const. art. 6, § 6(1).

Historically, whether aggregation of class claims to meet the statutory threshold to establish district court jurisdiction was permitted under the Nevada Constitution had never been meaningfully challenged. And NRCP 23—setting out the rules for class actions—was silent on the issue prior to its amendment in 2019. In 2018, however, the ability to aggregate class claims to establish jurisdiction was directly challenged and heard by this court in *Castillo*.

In *Castillo*, plaintiffs in a consumer protection case sought to aggregate their claims to meet the statutory threshold amount to establish jurisdiction in the district court. 134 Nev. at 14, 409 P.3d at 56. The defendant filed a motion to dismiss, arguing the district court did not have jurisdiction because each plaintiff failed to prove that they were individually entitled to damages in excess of the statutory threshold. *Id.* at

---

[5]In light of this disposition, we need not reach the issue of whether subject matter jurisdiction was proper as a result of the request for injunctive relief.

[6]The statutory amount has since been raised to $15,000. 2015 Nev. Stat., ch. 200, § 2.2, at 945.

15, 409 P.3d at 56. The district court determined the plaintiffs could not aggregate their claims and dismissed the case. *Id.* The plaintiffs then appealed to this court. *Id.* Ultimately, a panel of this court reversed the district court's decision and remanded the case, but did so on the basis that the district court had jurisdiction through the plaintiffs' request for injunctive relief. *Id.* at 19, 409 P.3d at 59.

However, in *Castillo*, the court also considered the aggregation issue and concluded that class claims could not be aggregated to establish district court jurisdiction. *Id.* at 14, 409 P.3d at 56. In deciding that aggregation of class claims was not permissible, the *Castillo* court looked to other jurisdictions and distinguished Nevada. *See id.* at 16-17, 409 P.3d at 57-58. *Castillo* noted that "[o]ther jurisdictions have allowed for aggregation" in meeting their district court equivalents' jurisdictional threshold because those states' courts of limited jurisdiction are not "equipped to adjudicate class actions." *Id.* (quoting *Dix v. Am. Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206, 210-11 (Mich. 1987), and citing *Thomas v. Liberty Nat'l Life Ins. Co.*, 368 So. 2d 254, 257 (Ala. 1979); *Judson Sch. v. Wick*, 494 P.2d 698, 699 (Ariz. 1972); and *Galen of Fla., Inc. v. Arscott*, 629 So. 2d 856, 857 (Fla. Dist. Ct. App. 1993)). *Castillo* distinguished Nevada because, under JCRCP 23, "justice courts have the ability to hear class actions." *Id.* at 17, 409 P.3d at 58.

Thereafter, disagreeing with the court's conclusion regarding aggregation of claims, multiple parties moved to proceed as amicus curiae and requested this court depublish *Castillo*. *See generally* Amicus Curiae Progressive Leadership Alliance of Nev.'s Motion to De-Publish Opinion and to Stay Issuance of Remittitur, and for Possible Alternative Relief and Motion to Exceed Page Limitation, *Castillo v. United Fed. Credit Union*,

SUPREME COURT
OF
NEVADA

(O) 1947A

Docket No. 70151 (Apr. 27, 2018). This court denied the motion to depublish and stated that, "[b]ecause the aggregation discussion is not necessary to the disposition, it arguably constitutes dictum, not mandatory precedent." *Castillo*, Docket No. 70151, at *2 (Order Denying Motion to Depublish, June 12, 2018).

Then, in 2019, NRCP 23 was amended to expressly allow for the aggregation of class claims to establish district court jurisdiction. *See In re Creating a Comm. to Update & Revise the Nev. Rules of Civil Procedure*, ADKT 522 (Order Amending the Rules of Civil Procedure, the Rules of Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules, Dec. 31, 2018). Under the current rule, "[t]he representative parties may aggregate the value of the individual claims of all potential class members to establish district court jurisdiction over a class action." NRCP 23(b).

Recognizing this complicated and conflicting history, we take this opportunity to review our decision in *Castillo* and to clarify the rule regarding aggregation of class claims to establish district court jurisdiction. Applying this court's precedent, we are not persuaded the aggregation holding in *Castillo* is nonbinding dicta. In *St. James Village, Inc. v. Cunningham*, we indicated, "[a] statement in a case is dictum when it is unnecessary to a determination of the questions involved." 125 Nev. 211, 216, 210 P.3d 190, 193 (2009) (internal quotation marks omitted). Despite the panel's subsequent equivocation in its Order Denying Motion to Depublish, the *Castillo* court expressly chose to consider the aggregation issue prior to resolving the injunctive-relief issue, and therefore, we disagree that the aggregation discussion was mere dicta. *See* 134 Nev. at 16-17, 409 P.3d at 57-58.

"[U]nder the doctrine of *stare decisis*," this court will not overturn its prior decisions absent compelling reasons to do so. *Armenta-Carpio v. State*, 129 Nev. 531, 535, 306 P.3d 395, 398 (2013) (alteration in original) (quoting *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008)). Compelling reasons include "badly reasoned" or "unworkable" decisions. *State v. Lloyd*, 129 Nev. 739, 750, 312 P.3d 467, 474 (2013) (internal quotation marks omitted). We are persuaded that there are compelling reasons for overturning *Castillo*, to the extent that it holds that individual class members' claims cannot be aggregated to determine jurisdiction.[7]

First, *Castillo* suggests that justice courts' ability to hear class actions under JCRCP 23 somehow counsels against aggregation, but nothing in JCRCP 23 speaks to aggregation and the two concepts are not mutually exclusive.[8]

Second, the *Castillo* aggregation holding is in conflict with the newly amended NRCP 23(b),[9] which expressly allows for aggregation of claims to establish district court jurisdiction.

---

[7]This opinion does not alter the approach to aggregation of claims in non-class actions. In non-class actions with multiple plaintiffs, each plaintiff must meet the statutory and constitutional requirements for the court to have subject matter jurisdiction over its claim. *See* NRS 4.370(1); Nev. Const. art. 6, § 6(1).

[8]Nothing in this opinion prevents justice courts from hearing *small* class actions in which the *total* amount claimed does not exceed the jurisdictional threshold.

[9]While the recently amended NRCP 23(b) expressly permits aggregation of class members' alleged damages for jurisdictional purposes, amendments to court rules do not apply retroactively, so NRCP 23(b) does not apply in this case. *See Nev. Pay TV v. Eighth Judicial Dist. Court*, 102

SUPREME COURT
OF
NEVADA

(O) 1947A

Finally, we believe the opinion did not account for the purposes behind the jurisdictional threshold and failed to fully consider the impact of its decision on justice courts, which, as this case illustrates, could be significant. *Castillo* correctly observed that Nevada justice courts have the authority under JCRCP 23 to hear class actions, but it did not consider whether a justice court is—as a practical matter—"equipped to adjudicate" a *large* class action, with hundreds of plaintiffs and millions of dollars at stake. The foreign cases the court cited, soundly, were not concerned so much with the legal authority of local courts of limited jurisdiction to adjudicate such a case as with those courts' ability to provide "*effective* relief." *Wick*, 494 P.2d at 699 (emphasis added). Justice courts are designed to handle relatively small cases efficiently and quickly; that is precisely why the Legislature has imposed a maximum amount in controversy on the jurisdiction of justice courts. In our view, the monetary threshold of NRS 4.370 was designed to limit justice courts' civil docket to relatively small and simple cases—not to blindly impose a rule that would result in a justice court hearing a massive and complex case like the one before us today.

We find these practical concerns to be serious and not fully ameliorated by the existence of a procedural rule—JCRCP 23—allowing justice courts to preside over class actions. We are unaware of even a single large class action that has ever been tried in a Nevada justice court pursuant to JCRCP 23. We have the utmost respect for the competence and professionalism of Nevada's justices of the peace, but we think the best way

---

Nev. 203, 205 n.2, 719 P.2d 797, 798 n.2 (1986) (citing NRS 2.120), *superseded by rule on other grounds as stated in State, Dep't of Motor Vehicles & Pub. Safety v. Eighth Judicial Dist. Court*, 113 Nev. 1338, 948 P.2d 261 (1997).

to show that respect is by declining to saddle them with massive class actions for which they are wholly unprepared.

Accordingly, as it appears that no "legitimate reliance interest[ ]" will be affected by our decision today, *South Dakota v. Wayfair, Inc.*, __ U.S. __, __, 138 S. Ct. 2080, 2098 (2018) (internal quotation marks omitted) ("Reliance interests are a legitimate consideration when the Court weighs adherence to an earlier but flawed precedent."), we hold that the jurisdictional interpretation set forth in *Castillo* regarding aggregation was incorrect and that total damages sought by the class, rather than those sought by any individual class member, must be considered in determining whether the justice court has jurisdiction under NRS 4.370.[10]  Because the class here sought more than $10,000, jurisdiction was proper in district court. *Castillo* is overruled to the extent it is inconsistent with this opinion.

*The district court improperly interpreted the MWA notice requirements and so improperly tolled the statute of limitations*

A Cab contends that the district court's equitable tolling of the MWA's two-year statute of limitations was based on an improper interpretation of the MWA's notice requirement in the Nevada Constitution. *Perry v. Terrible Herbst, Inc.*, 132 Nev. 767, 768, 383 P.3d 257, 258 (2016) (concluding that applying the two-year statute of limitations in NRS 608.260 is proper for MWA claims). "We review questions of

---

[10]At oral argument before this court, counsel for A Cab expressed concern that, should we overrule *Castillo*, plaintiffs would have the option of aggregating their damages or not as they saw fit and could therefore choose whether to file in district court or justice court. We can identify no legal basis for that concern, but to remove any doubt, we clarify that the total damages sought by the class *must*—not may—be considered.

constitutional interpretation de novo." *W. Cab Co. v. Eighth Judicial Dist. Court*, 133 Nev. 65, 73, 390 P.3d 662, 670 (2017).

Under the MWA, the Labor Commissioner is required each spring to publish a bulletin announcing the adjusted minimum wage rates. The MWA provides that "[a]n employer shall provide written notification of the rate adjustments to each of its employees and make the necessary payroll adjustments by July 1 following the publication of the bulletin." Nev. Const. art. 15, § 16(A). Here, the district court concluded that "[a] plain reading of the MWA can only result in an obligation on the employer to 'provide' to 'each' of its employees 'written notification' of the rate adjustments to the minimum wage." Upon determining that the drivers had not been properly informed of yearly minimum wage increases, the district court remedied the situation by tolling the statute of limitations, such that drivers whose claims arose prior to October 2010 and who were employed by A Cab on the annual notification date—July 1—of 2007, 2008, 2009, and/or 2010 were included in the class.

The purpose of the MWA annual notification requirement is to inform employees of the current minimum wage. There is no express requirement that each employee be individually provided with written notice; notice posted in a common work area is a form of written notification that is available to each employee. The drivers here obtained this notification, in writing, through the notices posted by A Cab in employee common areas along with other required employment information. We therefore conclude that, by posting the written notices in a common, conspicuous area to which each driver had access, A Cab fulfilled the MWA's

requirements to provide written notice to each employee.[11] *See, e.g.*, NRS 608.013 (requiring employers to "conspicuously post and keep so posted on the premises where any person is employed a printed abstract of this chapter [on Compensation, Wages and Hours] to be furnished by the Labor Commissioner" to inform employees of their rights).

Given that the district court's incorrect reading of the MWA was its only justification for tolling the statute of limitations, we reverse the tolling decision and conclude that the drivers' claims extend backwards only two years before their suit was filed. We remand to the district court to recalculate damages for this shorter time period.

*The district court properly granted summary judgment for the drivers*

A Cab contends that the district court erred by entering summary judgment in favor of the drivers, arguing that there were outstanding issues of material fact regarding claims for wages for both the 2013-2015 period and prior to 2013. A Cab argues that, as for the pre-2013 period, detailed analysis of the tripsheets it provided is the only accurate way to calculate any damages, although the district court found that A Cab did not present any evidence of inaccuracy in the final calculations.

A district court's decision to grant summary judgment is reviewed de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if the pleadings and all other

_____

[11]While we do not defer to an agency's interpretation of the state constitution, we find it persuasive that, for over a decade, the Office of the Nevada Labor Commissioner has required only posted notice. The Office of the Labor Commissioner website instructs employers to post the annual minimum wage bulletin in each place of business where employees work and does not mention sending additional notices. State of Nev. Dep't of Bus. & Indus., Office of the Labor Comm'r: Required Emp'r Postings (Dec. 3, 2021) (https://labor.nv.gov/Employer/Employer_Posters/).

Supreme Court of Nevada

(O) 1947A

evidence on file demonstrate that no genuine issue of material fact exists "and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted). All evidence "must be viewed in a light most favorable to the nonmoving party." *Id.* To withstand summary judgment, the nonmoving party cannot rely solely on general allegations and conclusions set forth in the pleadings but must instead present "specific facts demonstrating the existence of a genuine factual issue" supporting the party's claims. *Id.* at 731, 121 P.3d at 1030-31 (internal quotation marks omitted).

*Period between 2013 and 2015*

Reviewing A Cab's claim that the district court erred in ordering summary judgment, this later time period, 2013-2015, presents a simple question for our review. A Cab provided the drivers with its own computerized pay and hour records, and the drivers' expert simply entered that data into a spreadsheet to calculate each driver's hours, pay, and minimum wage deficiencies. The calculations showed a disparity between the amounts owed as minimum wage and the actual pay, entitling the drivers to recovery. The district court concluded that these spreadsheets were mathematically accurate and entered summary judgment for the damage amounts calculated in those spreadsheets.

A Cab argues that we should reverse the summary judgment as to this period, yet it has not demonstrated existing issues of material fact on the underlying data points (data points *it* provided to the drivers), the calculations performed by the drivers' experts, or the minimum wage deficiencies revealed by those calculations. As a result, we have been provided with no justification to reverse the district court's order granting summary judgment for this period.

*Period before 2013*

A Cab contends the district court incorrectly granted summary judgment for the pre-2013 time period, arguing the records it provided to the drivers were sufficient and that the district court improperly shifted the burden to A Cab by requiring it to pay for a special master. Because A Cab believes it provided all statutorily required information, A Cab further asserts that the district court allowing reasonable approximation damages was not appropriate. We review this issue de novo and conclude the district court properly granted summary judgment for this period.

Pursuant to NRS 608.115(1), every employer is required to "establish and maintain records of wages" for each pay period for its employees. In pertinent part, these wage records must "show[ ] for each pay period," among other things, the "[g]ross wage," "[n]et cash wage," and "total hours employed in the pay period by noting the number of hours per day." NRS 608.115(1)(a), (c) & (d). Additionally, employers are required to maintain these records for two years, and the employer is required to provide this information "to each employee within 10 days after the employee submits a request." NRS 608.115(2)-(3).

During the discovery process, A Cab provided the drivers with two forms of pay information for the period before 2013: data from its computerized pay records and handwritten tripsheets. There is no dispute that the computerized data for this period did not contain information regarding the total hours worked per shift. However, the tripsheets accounted for all hours worked by the drivers, including the start and end times and handwritten notes from the drivers about breaks during the shift. So, the wage and shift information was in the computerized form, and the hours worked information was in the handwritten tripsheets. Therefore, to determine hours worked per shift and pay period for each of the drivers in

(O) 1947A

the class based on the tripsheets, it would have been necessary to perform extensive calculations from the tripsheets, and then to harmonize those with the shift and wages per pay period information to establish any deficiencies.

The district court held that the information A Cab provided to the drivers did not conform to the requirements of what records employers must keep and provide under NRS 608.115. We agree. The plain meaning of the statute requires employers to keep records showing an employee's wage and the number of hours worked per day and to provide this information to employees on request. *See* NRS 608.115(1), (2); *Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 579-80, 97 P.3d 1132, 1135 (2004) (providing this court interprets clear and unambiguous language by its plain meaning). Although the drivers could have ultimately determined hours worked from what was provided, A Cab did not fulfill its burden to provide this statutorily required information to the drivers.[12]

As a result, we conclude that the district court properly required A Cab to pay for a special master to analyze the information. Under NRCP 53, a court may appoint a master to assess and determine factual issues, and the court is required to consider fairness when imposing the expenses of the master on the parties. We agree with the district court

---

[12]We recognize that this information provided by A Cab may be sufficient in other civil actions. *See Pizarro-Ortega v. Cervantes-Lopez*, 133 Nev. 261, 265, 396 P.3d 783, 787 (2017) (recognizing that a party requesting damages has a duty to provide a computation of damages based upon information available to it). However, in this matter, the employer has the burden to maintain and produce the records in the manner provided by the statute. *See* NRS 608.115.

that "it would not have been equitable nor justified to require Plaintiffs to pay for work performed by the Special Master when it was Defendant A Cab's failure to comply with NRS 608.115" that led to the need to hire a special master in the first place.

After A Cab did not pay the special master fees, the district court appropriately permitted the drivers to approximate the damages for this time period. In doing so, the district court relied on *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946), *superseded by statute on other grounds as stated in Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014), which this court relied upon in *Bombardier Transportation (Holdings) USA, Inc. v. Nevada Labor Commissioner*, 135 Nev. 15, 28, 433 P.3d 248, 259 (2019). In *Mount Clemens*, the United States Supreme Court permitted plaintiffs to use approximate calculations of damages in a Fair Labor Standards Act action when the defendant employer failed to keep proper and accurate records and also failed to produce evidence to negate the approximation evidence. 328 U.S. at 687-88. In *Bombardier*, this court agreed with that analysis on the grounds that employees "should not be penalized for the employer's failure to keep accurate records as required by law." 135 Nev. at 28, 433 P.3d at 259 (internal quotation marks omitted).

Although here, A Cab had the information required and requested, it was in a form different and more complicated than that required by statute, and we conclude this difference is immaterial for the purposes of a *Mount Clemens* analysis. We conclude that the district court's decision to permit the drivers to approximate damages was proper, given A Cab's insufficient information and refusal to pay the special master.

We must next consider whether the spreadsheets for this period were reasonable approximations of the records that the district court found

defendants should have produced. In *Mount Clemens*, the approximation evidence presented was employee testimony regarding time spent walking to worksites and engaging in extensive work-related preparation before the shift period began, which the employees would not be able to prove with a high degree of reliability or accuracy. 328 U.S. at 692-93. In *Bombardier*, the evidence was in the form of the plaintiffs' reasonable estimates of what proportion of hours worked and tasks completed "constituted repair work." 135 Nev. at 28, 433 P.3d at 259. Here, as described above, the drivers made calculations from the actual pay given to the drivers, the actual number of shifts worked by the drivers per pay period, and an approximation of the hours worked per shift (using the hours-per-shift in the 2013-2015 data to estimate the average shift length in the earlier time period). We agree this was an appropriate method to approximate damages. *See Mount Clemens*, 328 U.S. at 693 ("Unless the employer can provide accurate estimates, it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence . . . .").

A Cab points out that the district court initially declined to enter summary judgment on the calculations based on the estimations, which is true. However, the district court had merely said that, while its *preference* would have been for the special master to make calculations based on the tripsheets, A Cab did not enable that to happen, and consequently, the district court was permitted to use less specific data to calculate damages. *See id.* at 687-88 (stating that when an employer does not keep accurate records, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the

SUPREME COURT
OF
NEVADA

(O) 1947A

court may then award damages to the employee, even though the result be only approximate"); *see also Bombardier*, 135 Nev. at 28, 433 P.3d at 259. The spreadsheets provided reasonable approximations of the records that defendants should have produced and provided appropriate calculations of damages. The only approximation evidence was the 9.21 hours-per-shift average estimate, which had ample support, including one of A Cab's own experts' testimony acknowledging that his average sampling would have allowed for 9.7 hours-per-shift. Therefore, with damages calculated based on these reasonable estimates, the district court properly granted summary judgment. We affirm the district court's summary judgment; however, as stated above, we remand to the district court to recalculate damages based on the two-year statute of limitations.

*The district court did not abuse its discretion in severing the claims against Nady*

A Cab argues that the district court erred in severing the claims against Nady, contending that the district court severed the claims only "to artificially create finality" to beat a similar, concurrently litigated class action to judgment. We have not previously stated the standard of review for a severance under NRCP 21. We note that "NRCP 21 parallels FRCP 21," *Valdez v. Cox Commc'ns Las Vegas, Inc.*, 130 Nev. 905, 908, 336 P.3d 969, 971 (2014), and under the federal rule, "[t]he trial court has broad discretion to sever issues to be tried before it," *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). We today clarify that we review a district court's severance of claims for an abuse of discretion.

Under NRCP 21, the court may drop or add a party through a motion of any party or on its own, and the court may sever claims. We have said that "when a judgment has been entered resolving claims properly severed, it is final and appealable, despite the existence of other pending,

SUPREME COURT
OF
NEVADA

(O) 1947A

unsevered claims." *Valdez*, 130 Nev. at 907, 336 P.3d at 971. However, we have not provided guidance on when severance is proper.

Federal courts consider several factors in deciding whether severance is proper under FRCP 21, including

> (1) whether the claims arise out of the same transaction or occurrence;
>
> (2) whether the claims present some common questions of law or fact;
>
> (3) whether settlement of the claims or judicial economy would be facilitated;
>
> (4) whether prejudice would be avoided if severance were granted; and
>
> (5) whether different witnesses and documentary proof are required for separate claims.

*Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018).

The trials of A Cab and Nady had already been bifurcated for purposes of judicial economy under NRCP 42(b). During the summary judgment hearing, the drivers stressed the importance of finality as to the corporate defendants and asked the court to sever the remaining claims against Nady. The district court severed all claims against Nady pursuant to NRCP 21 and stayed them for 60 days in its order.[13]

A Cab's only cogent argument against the severance is based on one case, where the United States Court of Appeals for the Second Circuit found an abuse of discretion because "the severance was so transparently a confusion of" bifurcation and severance "or an attempt to separate an essentially unitary problem" for the purposes of creating finality. *Spencer,*

---

[13]In 2019, we dismissed Nady's appeal in this matter on the jurisdictional ground that no final judgment had been entered against Nady since the claims against him had been severed. *Nady v. Murray*, No. 77050, 2019 WL 3072593 (Nev. July 12, 2019) (Order Dismissing Appeal).

SUPREME COURT
OF
NEVADA



(O) 1947A

21

*White & Prentis Inc. of Conn. v. Pfizer Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) (internal quotation marks omitted). A Cab argues this matter is comparable to *Spencer* and that the district court severed the claims against Nady to win the race between the two similar class actions, to get to a final judgment to vindicate the MWA, and to defeat Nady's right to a timely trial.

We find no merit in A Cab's arguments that the district court abused its discretion and no support for its bald claims regarding the district court's supposed ulterior motives for severing the case. A Cab speculates on the judge's actual reasons for granting finality while ignoring the judge's legitimate, stated reasons. In considering the *Parchman* factors, we see several reasonable justifications for the district court's severance. Most prominently, the district court sought to facilitate settlement and judicial economy by severing the alter ego claims—particularly because, if the drivers collected the full amount of their judgment against the corporate defendants, there would be no need to proceed with the claims against Nady. The claims against Nady (as an alter ego of A Cab and under an unjust enrichment theory) were severable under the *Parchman* factors because those claims involved different forms of evidence and might be rendered unnecessary. Therefore, we conclude that A Cab has not shown that the district court abused its discretion in severing these claims.

*The award of attorney fees must be reconsidered, in light of this disposition, and the district court abused its discretion in awarding costs*

A Cab argues that the district court disregarded procedural rules and awarded excessive fees and costs, even though the eventual

SUPREME COURT
OF
NEVADA

(O) 1947A

recovery by the class representative plaintiffs was less than the amounts A Cab had offered in settlement.[14]

Under the MWA, "[a]n employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs." Nev. Const. art. 15, § 16(B). "A district court's decision regarding an award of costs will not be overturned absent a finding that the district court abused its discretion." *Village Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 276, 112 P.3d 1082, 1092 (2005). The district court in this matter awarded the drivers $568,071 in attorney fees and $46,528 in costs, including $29,022 in expert fees. For the reasons outlined below, we reverse the award of attorney fees and costs, and remand to the district court for further proceedings consistent with this opinion.

*Attorney fees*

With respect to attorney fees, district courts have discretion regarding which method is used to determine the fees but must consider the four factors outlined in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 349-50, 455 P.2d 31, 33 (1969). These factors include the attorney's "professional qualities, the nature of the litigation, the work performed, and the result. In this manner, whichever method the court ultimately uses, the result will prove reasonable as long as the court provides sufficient reasoning and findings in support of its ultimate determination." *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 865, 124 P.3d 530, 549 (2005).

---

[14]A Cab argues the drivers did not best the settlement offer under NRCP 68 and therefore may not recover any attorney fees or costs. However, we need not consider this argument because the drivers were entitled to reasonable attorney fees and costs under the MWA. *See* Nev. Const. art. 15, § 16(B).

SUPREME COURT
OF
NEVADA

(O) 1947A

A Cab argues the attorney fees award was excessive and that the drivers did not provide proper documentation for the district court to calculate the amount awarded. The drivers supported their request for attorney fees with a declaration by counsel that detailed the experience of the advocates, the difficulty of the work, and the time devoted to the work through a review of "contemporaneous time records" (which were not attached). A Cab argues this did not meet NRCP 54(d)(2)(B)'s requirement at the time that a request for fees must, among other things, "state the amount sought or provide a fair estimate of it; and be supported by counsel's affidavit swearing that the fees were actually and necessarily incurred and were reasonable, [as well as] documentation concerning the amount of fees claimed." NRCP 54(d)(2)(B) (2009). The district court awarded attorney fees in the amount of $568,071. It supported that award by going through three possible formulations to calculate hours and fees and through a consideration of the four *Brunzell* factors. We conclude that the declaration of counsel constituted the "documentation" required under NRCP 54(d)(2)(B), and A Cab has not shown that the attorney fees award was unsupported or excessive beyond asserting that the drivers did not provide the appropriate documentation. However, in light of this disposition and the district court's improper tolling of the statute of limitations, the amount of the attorney fees must be reconsidered for reasonableness, and we therefore reverse and remand the award of attorney fees.

*Costs*

With respect to costs, trial courts are urged to exercise restraint and strictly construe statutes permitting recovery of costs. *Bergmann v. Boyce*, 109 Nev. 670, 679, 856 P.2d 560, 566 (1993), *superseded by statute on other grounds as stated in In re DISH Network Derivative Litig.*, 133 Nev. 438, 451 n.6, 401 P.3d 1081, 1093 n.6 (2017). "To support an award of costs,

SUPREME COURT
OF
NEVADA

(O) 1947A

24

justifying documentation must be provided to the district court to demonstrate how such [claimed costs] were necessary to and incurred in the present action." *In re DISH*, 133 Nev. at 452, 401 P.3d at 1093 (alteration in original) (internal quotation marks omitted).

The drivers supported their request for nonexpert costs with a declaration by counsel that included a table noting litigation expenses extracted from a review of office records. However, this documentation was insufficient because the drivers did not provide justification for why each cost was necessary or proof that each cost was incurred in the present action. *See id.*; *see also Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. 114, 121, 345 P.3d 1049, 1054 (2015) ("'[J]ustifying documentation' must mean something more than a memorandum of costs."); *Village Builders 96, L.P. v. U.S. Labs, Inc.*, 121 Nev. 261, 276-78, 112 P.3d 1082, 1092-93 (2005) (explaining that providing justification for each copy made or call placed is necessary in order for the district court to properly assess whether the cost was actually incurred and reasonable); *Bobby Berosini, Ltd. v. PETA*, 114 Nev. 1348, 1352-53, 971 P.2d 383, 386 (1998) (concluding the district court abused its discretion in awarding costs where parties did not provide itemization or justification of certain costs incurred). Accordingly, the district court abused its discretion in awarding the drivers their nonexpert-related costs, and we remand for further proceedings.

A Cab additionally argues that the district court erred in its award of expert witness fees because the amount exceeded the statutory cap and the case did not go to trial. NRS 18.005(5) caps expert witness fees at $1,500 per expert, for not more than five experts. Any award beyond that cap requires careful evaluation by the district court, in which the court must consider several factors, including "the importance of the expert's testimony

to the party's case," the extent of the expert's work, and "whether the expert had to conduct independent investigations or testing." *Frazier v. Drake*, 131 Nev. 632, 650-51, 357 P.3d 365, 377-78 (Ct. App. 2015).

We conclude that the district court did not adequately support its award of expert witness fees in excess of NRS 18.005(5)'s limitation, in light of *Frazier*'s instructions for how that analysis should be conducted. The district court referenced the dispute regarding who bore the burden of providing and analyzing wage-and-hour information, saying "defendants might have a colorable argument against the [drivers'] expert costs had the [s]pecial [m]aster completed his work regarding the trip sheets. . . . [The drivers'] experts were necessary and their expenses were reasonable given the extent of the work performed in calculating the damages based upon the computer data information which was provided by A Cab." However, this weighs against awarding excess expert witness fees. The drivers did not hire an expert to do the work the special master would have done; their expert performed only the wage-and-hour calculations that would have been required even if A Cab had provided sufficient information for both time periods. Given that the district court did not provide a reasonable justification for such excess expert fees, we also reverse and remand this portion of the costs award for further consideration by the district court in light of *Frazier*.

*The district court did not err in amending the judgment, but it should have held an evidentiary hearing on the motion to quash collection of the judgment amount*

The day after summary judgment was entered, the district court granted a motion to amend the judgment to include "A Cab Series LLC" (one of the named appellants here). This order allowed the judgment to be amended "to indicate it is against 'A Cab Series LLC' as the current

name of the originally summoned defendant and judgment debtor 'A Cab LLC.'" A Cab contends that "A Cab, LLC," and "A Cab Series, LLC," are different entities and the district court's order "add[ed] a party after final judgment." The drivers insist that "A Cab Series, LLC," is simply the new name of the defendant they originally sued.

A Cab urges us to review this order as an impermissible addition of a third party as a judgment debtor. For the purposes of framing this question, we use the language of amending the judgment, as per the district court's order. NRCP 59(e) permits motions to alter or amend a judgment. Orders deciding an NRCP 59(e) motion are not independently appealable but are reviewed for an abuse of discretion when included with a proper appeal. *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010).

In 2005, Nevada amended NRS 86.296 to allow for the creation of "Series LLCs," a relatively new form of corporate entity that exists only in certain states. 2005 Nev. Stat., ch. 459, § 27, at 2193-94. Within a Series LLC structure, an "LLC may establish and contain within itself separate series or cells. . . . Each such separate Protected Series is treated as an enterprise separate from each other and from the Series LLC itself." Alberto R. Gonzales & J. Leigh Griffith, *Challenges of Multi-State Series and Framework for Judicial Analysis*, 42 J. Corp. L. 653, 655 (2017). If certain conditions are met, then "[t]he debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular series are enforceable against the assets of that series only, and not against the assets of the company generally or any other series." NRS 86.296(3). In Nevada, a Series LLC is created by first allowing for the creation of one or more cell series in the articles of organization or operating

SUPREME COURT
OF
NEVADA

(O) 1947A

agreement of an LLC. NRS 86.296(2). Second, in order to trigger the liability shield protections of the created cell series, a cell series must have separate records from the LLC as a whole and from any other cell series, and the articles of organization or operating agreement must provide that debts, liabilities, and expenses are only enforceable against that individual cell series. NRS 86.296(3).

Although we have not previously had occasion to interpret the statutory scheme, the plain text of the statute governs a few important considerations for this case. First, the one-or-more cell series within the Series LLC is created by the LLC's operating agreement or articles of organization—not by a filing with the Nevada Secretary of State. NRS 86.296(2). Second, NRS 86.296(2) provides a list of optional, but not mandatory, attributes for a Series LLC. Third, the liability shield protections require the triggers discussed above, which are shown in the operating agreement or articles of organization and through the practice of separate and distinct record-keeping and accounting. NRS 86.296(3).

In 2012, A Cab, LLC, amended its articles of organization and filed them with the Secretary of State. The attached articles listed the name of the company as "A Cab, LLC," and stated in one article—

> This is a Series Limited Liability Company that may establish designated series of members, managers, company interests having separate rights, powers or duties with respect to specified property or obligations of the Company or profits and losses associated with specified property or obligations, and, to the extent provided in the Operating Agreement of the Company, any such series may have a separate business purpose or investment objective and/or limitation on liabilities of such series in accordance with the provisions of Section 86.161(e) of the Nevada Revised Statutes.

SUPREME COURT
OF
NEVADA

(O) 1947A

According to A Cab, after the Series LLC was formed, at least five separate cell series entities were created: "A Cab Series, LLC, Maintenance Company; [A] Cab Series, LLC, Administration Company; A Cab Series, LLC, Taxi Leasing Company; A Cab Series, LLC, Employee Leasing Company[;] A Cab Series, LLC, Medallion Company; and others." In 2016, the Nevada Taxicab Authority authorized "Admiral Taxicab Service, LLC d b a A Cab, LLC," to operate 115 taxicab medallions. In 2017, A Cab, LLC, again filed with the Secretary of State an amendment to the articles of organization, with the statement, "The name is now A Cab, Series L.L.C."

Following the district court's summary judgment in August 2018, the drivers moved to amend the judgment to include "A CAB SERIES LLC," and then served a writ of garnishment (execution) on Wells Fargo Bank for any accounts or monies "owned by judgment debtors A Cab LLC or A Cab Taxi Service LLC."[15] The defendants moved to quash that writ of execution on the grounds that funds were taken from "separate independent entities which although related to A Cab LLC are not subject to execution," i.e., various series companies created under the umbrella of A Cab Series, LLC, and that the court had not yet granted the drivers' motion to amend the judgment. The district court then granted the drivers' motion to amend the judgment to include "A Cab Series, LLC," and denied the defendants' motion to quash the writ of execution.

---

[15]A Cab Taxi Service LLC was named as a party to the case from the beginning but was not served and did not appear, and it does not appear to exist.

On appeal, A Cab argues again that the district court should not have allowed a new, third party (A Cab Series, LLC) to be added to the judgment and should not have allowed garnishment from accounts belonging to separate series entities such as "A Cab Series, LLC, Maintenance Company." A Cab argues that the requirements of NRS 86.296 have been met, and as a result, separate, shielded series entities exist. The drivers respond that no third party was added because "A Cab Series, LLC," is one and the same as "A Cab, LLC," given the name change in 2017. Further, the drivers contend that collection from the individual series entity accounts is appropriate because no cell series entities with the NRS 86.296(3) liability shield exist. Even if cell series entities *did* exist, the drivers insist the cell entities' alleged injury should not be part of this appeal since neither of the appellants may assert the rights of third parties.

The record convinces us that the drivers are correct that the original defendant "A Cab, LLC," no longer exists except under the changed name of "A Cab Series, LLC," and the district court properly allowed the judgment to be amended to reflect that change. In 2012, A Cab, LLC, became a Series LLC, and, in 2017, it changed its name to reflect that shift. A Cab's arguments that there are two separate entities is belied by the record, the 2017 name change document, and even the way the names were used interchangeably to refer to the parties within the dispute below and on appeal. As a result, we conclude that the district court did not abuse its discretion in amending the judgment to include "A Cab Series, LLC."[16]

---

[16]For clarity, the district court should have *substituted* "A Cab, LLC," with "A Cab Series, LLC," to reflect the fact that there was only ever one such entity.

We next must consider whether the district court nevertheless erred in permitting collection from the Wells Fargo accounts without conducting an evidentiary hearing on whether the requirements of NRS 86.296 had been met and the separate series liability shield had been created. Series entities under the umbrella of a Series LLC either exist or not based on their compliance with NRS 86.296. In a hearing on the motion to amend the judgment, the district court said, "I don't think this is the time to take evidence, frankly," and such evidence was never taken. We acknowledge that the district court's concerns about standing were valid. The district court was understandably unsure of what corporate entities were even *represented* during the hearings discussing the motions to quash the writ of execution and to amend the judgment.

But the district court did err in denying the motion to quash without conducting an evidentiary hearing. The district court acknowledged that while the issues could potentially "be cured by a belated appearance by the alleged series LLCs (if they are, in fact, properly constituted and exist), the interests of justice, and the need to promote judicial efficiency" led the court to make its decision without such appearances. The only way to assess the existence of the individual series entities for the purpose of judgment collection is through examining the operating agreements, and A Cab did not have the opportunity to use those agreements to present the district court with an argument for the series' existence. A Cab (and the series entities, if they actually exist and join the action) is entitled to an opportunity to present such evidence and argue its motion to quash. Accordingly, we reverse on this point and remand to the district court in order to reconsider the motion to quash the writ of execution.

*CONCLUSION*

This complex litigation ultimately hinged on two questions: (1) were the drivers underpaid? and (2) if yes, by how much? As a preliminary matter, we necessarily conclude the district court had jurisdiction over this class action because the drivers could aggregate their claims to meet the statutory threshold. Accordingly, we overrule *Castillo* to the extent that it conflicts with this opinion.

We conclude the district court erred by tolling the statute of limitations far beyond two years based on an erroneous interpretation of the MWA's notice requirements. We affirm the district court decision to grant summary judgment for the drivers using reasonable approximation evidence when A Cab failed to disclose the drivers' hours worked as required by statute. And we conclude the claims against Nady were properly severed. However, we conclude the district court must reconsider the award of attorney fees, in light of this disposition. Furthermore, the district court erred in its award of costs because its order did not adequately support the award of expert fees in excess of the statutory cap. Additionally, the drivers did not provide sufficient documentation for the district court to award the remaining costs. Finally, while the district court properly amended the judgment to include "A Cab Series, LLC," it erred by denying A Cab's motion to quash the execution of judgment without taking evidence on what corporate entities existed and were actually liable for the judgment.

Accordingly, we affirm in part the district court's summary judgment, as amended to include A Cab Series, LLC, and the severance of claims against Nady; however, we reverse the summary judgment as to damages for claims outside of the two-year statute of limitations, the order denying the motion to quash, the order awarding attorney fees, and the

 

costs award. We remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Silver

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A