**137 Nev., Advance Opinion 51**

IN THE SUPREME COURT OF THE STATE OF NEVADA

STEVE EGGLESTON,
Appellant,
vs.
GEORGINA STUART; CLARK
COUNTY, NEVADA; LISA CALLAHAN;
AND BRIAN CALLAHAN,
Respondents.

No. 80838

FILED

SEP 23 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order dismissing an action raising federal civil rights and state law tort claims for failure to exhaust administrative remedies. Eighth Judicial District Court, Clark County; Douglas Smith, Judge.

*Affirmed in part, reversed in part, and remanded.*

McFarling Law Group and Emily M. McFarling, Las Vegas,
for Appellant.

Olson Cannon Gormley & Stoberski and Felicia Galati, Las Vegas,
for Respondents Clark County, Nevada, and Georgina Stuart.

Brian Callahan, New Lenox, Illinois,
Pro Se.

Lisa Callahan, New Lenox, Illinois,
Pro Se.

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.

*OPINION*

By the Court, SILVER, J.:

Appellant Steve Eggleston filed a 42 U.S.C. § 1983 civil rights claim, as well as various state law tort claims, in the district court. In his complaint, Eggleston alleged that respondent Georgina Stuart, who is employed by the Clark County Department of Family Services (DFS), and two police officers forced him to sign a temporary guardianship over his two minor children under threat of never seeing his children again. The papers gave temporary guardianship to the children's maternal aunt, Lisa Callahan, who thereafter took the children to another state. One month after Eggleston signed the papers, DFS made a finding of child maltreatment against Eggleston, which he administratively appealed. But Eggleston delayed the administrative hearing before a fair hearing officer and, in the meantime, filed the aforementioned civil rights and tort claims in the district court. The district court determined that punitive damages were not available and dismissed Eggleston's request for such damages against Stuart and thereafter dismissed Eggleston's § 1983 and state law tort claims for failure to exhaust his administrative remedies. Eggleston then appealed.

In this opinion, we conclude that, consistent with *Patsy v. Board of Regents*, 457 U.S. 496 (1982), a party generally is not required to exhaust administrative remedies before filing a § 1983 civil rights claim. We also acknowledge that *Zinermon v. Burch*, 494 U.S. 113 (1990), provides a limited exception to *Patsy*'s general rule for procedural due process claims. Here, we conclude that the district court erred by requiring Eggleston to administratively exhaust all potential remedies in his DFS case before bringing his § 1983 and state law tort claims, because, while related, the

(O) 1947A

cases ultimately seek different remedies for different wrongs. The district court also erred by finding that Eggleston's § 1983 claim was solely a procedural due process claim subject to the exhaustion doctrine because Eggleston actually presented a substantive due process claim. Therefore, the district court improperly dismissed Eggleston's § 1983 and state law tort claims. We also conclude that the district court erred by determining that punitive damages were unavailable against Stuart at this point in the litigation.

*FACTS AND PROCEDURAL HISTORY*

Clark County and Stuart became involved with Eggleston after the mother of Eggleston's two minor children, Laura Battistella, allegedly expressed suicidal ideation in December 2014 and emergency services were summoned. As a result of Stuart's involvement, Eggleston asserts, he and Battistella agreed to participate in a DFS program designed to help increase the well-being of the entire family, which also included two other minor children of Battistella. In addition, Battistella's sister, Lisa Callahan, visited from the Chicago area to help with childcare and to support Battistella.

Eggleston alleges that on January 6, 2015, Stuart arrived at Eggleston and Battistella's home with two armed police officers, Lisa Callahan, and others. According to Eggleston, Stuart ordered Eggleston and Battistella to immediately sign temporary guardianship of the children over to Lisa Callahan, threatening that the police would take their children into custody and they would never see their children again if they did not comply. Under duress, Eggleston claims, he and Battistella signed the prepared temporary guardianship papers in front of a notary. Lisa Callahan thereafter took the children out of state, allegedly to Illinois to

hide them from Eggleston.[1] Eggleston alleges that he has not seen his children since this event, for over five years now.

Thereafter, in early February, DFS made a finding of child maltreatment against Eggleston.[2] Eggleston appealed the finding to the DFS appeals unit, and the appeals unit manager upheld the finding. Eggleston then requested a fair hearing to administratively appeal that decision (the DFS case), as set forth in the relevant statutes. At Eggleston's request, the fair hearing was initially set for August 1, 2017, but Eggleston thereafter requested three continuances and stopped communicating with DFS to coordinate a date for that hearing.

At no point did DFS move to terminate Eggleston's parental rights in Nevada. After Lisa Callahan fled to Illinois, Eggleston alleges he did not know the whereabouts of Lisa and his children for years. Unbeknownst to Eggleston, Lisa Callahan petitioned for permanent guardianship in an Illinois court. Eggleston then moved to terminate the guardianship in Illinois.

Over one year after he requested a fair hearing in the DFS case, Eggleston filed a complaint against Georgina Stuart, DFS, Child Support Services, Clark County, Lisa Callahan, and Brian Callahan, alleging civil rights and tort law violations. Clark County and Stuart moved to dismiss the claims, arguing that Eggleston failed to state a claim upon which relief can be granted and that punitive damages were not permitted pursuant to NRS 41.035(1), which precludes punitive damages awards against

---

[1]Lisa Callahan and her husband Brian Callahan are named as respondents in this appeal, but neither filed an answering brief.

[2]Specifically, DFS found physical injury, neglect, and plausible risk of physical injury as to four minor children.

employees of political subdivisions acting in the scope of employment. The district court granted the motion, concluding that some of the claims were deficient and that punitive damages were unavailable, but leave to amend was granted.

Eggleston filed a first amended complaint, again claiming violation of his civil rights under 42 U.S.C. § 1983 against Clark County and Stuart; conspiracy to violate his civil rights and intentional infliction of emotional distress (IIED) against Clark County, Stuart, and the Callahans; and defamation against Clark County, Stuart, and Lisa Callahan. Clark County and Stuart moved to dismiss Eggleston's first amended complaint under NRCP 12(b)(5) based on Eggleston's failure to exhaust his administrative remedies in his DFS case. Clark County and Stuart argued that because Eggleston's fair hearing was still pending, the exhaustion of administrative remedies doctrine barred Eggleston's civil complaint. Eggleston opposed the motion, but the district court dismissed his claims, finding that Eggleston initiated an administrative appeals process in the DFS case that was still pending when he filed his first amended complaint in the district court. The court further found that Eggleston's civil rights claims were based on procedural due process violations and thus excepted from the general rule that § 1983 claims do not require exhaustion. Accordingly, the district court found that Eggleston must first exhaust his administrative remedies in the DFS case and dismissed his § 1983 civil rights and state law tort claims on that basis. Eggleston moved for reconsideration, which was denied.[3]

---

[3]After the order dismissing the action was entered, the case was reassigned to Judge Cristina D. Silva, who decided the motion for reconsideration.

Eggleston appeals, arguing the exhaustion doctrine does not apply here and, therefore, the district court improperly dismissed his § 1983 and state law tort claims. He further argues the district court improperly dismissed his request for punitive damages against Stuart.

## DISCUSSION

*Standard of review*

A dismissal for failure to state a claim pursuant to NRCP 12(b)(5) is reviewed de novo. *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). A decision to dismiss a complaint under NRCP 12(b)(5) is rigorously reviewed on appeal with all alleged facts in the complaint presumed true and all inferences drawn in favor of the complainant. *Id.*

*Eggleston was not required to exhaust his administrative remedies before filing a 42 U.S.C. § 1983 civil rights claim in the district court*

Eggleston argues that the district court erred by dismissing his 42 U.S.C. § 1983 civil rights claim because under *Patsy v. Board of Regents*, 457 U.S. 496 (1982), he was not required to exhaust the administrative remedies in his DFS case before filing a § 1983[4] civil rights claim in the district court. Clark County and Stuart counter that Eggleston must first exhaust the administrative remedies in his DFS case under the exhaustion

---

[4]Eggleston refers to his two civil rights claims as § 1983 claims. However, his conspiracy claim actually falls under 42 U.S.C. § 1985. Eggleston fails to provide any authority or argument regarding § 1985 or demonstrate that the exception to the exhaustion doctrine for § 1983 claims applies to § 1985 claims. Therefore, his arguments regarding this claim are waived, and we affirm the dismissal of Eggleston's § 1985 conspiracy claim. *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (noting that arguments not raised in the opening brief are deemed waived).

doctrine because his § 1983 claim is a procedural due process claim, which is an exception to *Patsy* under *Zinermon v. Burch*, 494 U.S. 113 (1990).[5] We conclude that Eggleston was not required to exhaust his administrative remedies before bringing his § 1983 claim in the district court.

"Ordinarily, before availing oneself of district court relief from an agency decision, one must first exhaust available administrative remedies." *Malecon Tobacco, LLC v. State, Dep't of Taxation*, 118 Nev. 837, 839, 59 P.3d 474, 475-76 (2002). "[F]ailure to do so renders the controversy nonjusticiable." *Allstate Ins. Co. v. Thorpe*, 123 Nev. 565, 571, 170 P.3d 989, 993 (2007). "The exhaustion doctrine gives administrative agencies an opportunity to correct mistakes and conserves judicial resources, so its purpose is valuable; requiring exhaustion of administrative remedies often resolves disputes without the need for judicial involvement." *Id.* at 571-72, 170 P.3d at 993-94.

However, a party is generally not required to exhaust state administrative remedies before bringing a civil rights claim in federal or state court under 42 U.S.C. § 1983.[6] *Patsy*, 457 U.S. at 516; *Felder v. Casey*,

---

[5]We have considered Stuart's arguments regarding the finality doctrine, NRS 432B.317, and NRS 233B.130, and in light of our decision here, we conclude those arguments are without merit. We also do not address Stuart's argument that the district court properly denied Eggleston's NRCP 56(f) request for discovery because Eggleston does not dispute this ruling on appeal.

[6]42 U.S.C. § 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

Supreme Court
of
Nevada

(O) 1947A

487 U.S. 131, 146-47 (1988). Section 1983's purpose is "to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law." *Patsy*, 457 U.S. at 503 (internal quotation marks omitted). "[O]verlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983," *Zinermon*, 494 U.S. at 124, because "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape*, 365 U.S. 167, 183 (1961), *overruled in part on other grounds by Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

This general rule applies to § 1983 claims for fundamental rights violations or substantive due process claims. *Zinermon*, 494 U.S. at 125. "Substantive due process guarantees that no person shall be deprived of life, liberty or property for arbitrary reasons." *In re Guardianship of L.S. & H.S.*, 120 Nev. 157, 166, 87 P.3d 521, 527 (2004) (internal quotation marks omitted). Substantive due process protects certain individual liberties against arbitrary government deprivation regardless of the fairness of the state's procedure. 16C C.J.S. *Constitutional Law* § 1884 (2021). It does not protect against all government infringement, but is "reserved for the most egregious governmental abuses against liberty or property rights, abuses that shock the conscience or otherwise offend judicial notions of fairness and that are offensive to human dignity." *Id.*

---

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

SUPREME COURT
OF
NEVADA

(O) 1947A

The exhaustion doctrine is not a bar to § 1983 substantive due process claims because "the constitutional violation actionable under § 1983 is complete when the wrongful action is taken." *Zinermon*, 494 U.S. at 125.

The same cannot be said for procedural due process claims, which are an exception to the general rule. *Id.* ("[T]he existence of state remedies *is* relevant" to a § 1983 claim "brought for a violation of procedural due process."). Procedural due process rules protect persons from deprivations of life, liberty, or property that are mistaken or unjustified. 16C C.J.S. *Constitutional Law* § 1884 (2021). Procedural due process claims arise where the State interferes with a liberty or property interest and the State's procedure was constitutionally insufficient. *Malfitano v. Cty. of Storey*, 133 Nev. 276, 282, 396 P.3d 815, 819 (2017). In such claims, State deprivation "of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125 (internal quotation marks omitted). Therefore, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id.* at 126.

Here, the district court correctly stated that a § 1983 claim for a violation of procedural due process will not stand until the State fails to provide due process. But as set forth in more detail below, we conclude the district court incorrectly applied that standard to Eggleston's § 1983 claim in this case.

First, we conclude the district court erroneously determined Eggleston's due process claim was a procedural one. Although Eggleston complains in part that Clark County and Stuart failed to provide him with

notice of the allegations against him and an opportunity to respond in rebuttal, at its core, Eggleston's complaint presents a substantive due process claim for violation of the fundamental right to parent his children. The fundamental right to "bring up children" is encompassed within the right to liberty, a core guarantee protected by the Due Process Clause of the Fourteenth Amendment. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *see also In re L.S.*, 120 Nev. at 166, 87 P.3d at 527 (addressing a parent's substantive due process rights). Indeed, "[t]he liberty interest . . . of parents in the care, custody, and control of their children[ ] is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Here, not only is Eggleston claiming that he was not afforded adequate process protecting against the mistaken or unjustified loss of that right, but he is alleging that Clark County and Stuart arbitrarily and capriciously interfered with this right when, without cause, they forced him under duress to sign temporary guardianship papers leading to the unwarranted removal of his children from his care.[7] Eggleston further alleges that he thereafter did not have contact with his children for over five years, and the woman who fled the state with his children was able to obtain guardianship over his children in Illinois. Moreover, he claims, the children's forced removal from his home was part of a design to enhance the county budget and for personal gain. Taking Eggleston's allegations as true, as we must in the context of a motion to dismiss, the State's actions "shock the conscience" by removing the

---

[7]Furthermore, the record on appeal demonstrates that Clark County and Stuart focused their defense on the exhaustion of administrative remedies and did not provide any contradicting facts as to what happened when Eggleston signed the temporary guardianship below.

possibility of reunification and by violating Eggleston's fundamental right to raise his children. The constitutional violation was complete when the State forced Eggleston to sign the temporary guardianship papers, and thus this claim is fundamentally a substantive due process one exempt from the exhaustion doctrine.

Moreover, while Stuart argues, and the district court found, that Eggleston's § 1983 claim was an extension of his DFS case, the two cases are separate from each other, as they arise from two separate factual circumstances. Eggleston's allegations for his § 1983 claim arise from an incident that occurred before DFS made its finding of child maltreatment, while the DFS proceedings concern only that finding. And there is nothing in the record to suggest that DFS's finding of child maltreatment arose from the same set of facts underlying Eggleston's allegations that DFS coerced Eggleston into signing away his guardianship rights at the time that DFS removed the children from Eggleston. Thus, the district court improperly linked the case before it with the DFS case.

We further note that because Eggleston alleges DFS forced him to sign temporary guardianship papers without first implementing any process, Eggleston's allegations arise from a situation for which there were no administrative remedies available to redress the harm of losing his children. Importantly, if the State had instead petitioned the district court for temporary guardianship over Eggleston's children, it would have given Eggleston the chance to appear and oppose the temporary guardianship in open court. Thus, in that situation, due process would have been available to Eggleston, which he would have been required to pursue before raising his § 1983 claim. But here, Eggleston alleges that he was coerced by the government to sign temporary guardianship papers releasing his children

SUPREME COURT
OF
NEVADA

(O) 1947A

11

to the Callahans' care and he has never had an opportunity to see them again in over five years. Therefore, his § 1983 claim seeks to redress the harm stemming from that particular event, whereas even if Eggleston prevailed in the DFS case by proving the abuse allegations were unsubstantiated, his only remedy is that his name would be removed from the DFS's Central Registry. Accordingly, there is no relevant administrative remedy available to Eggleston stemming from these unique circumstances.

In sum, the district court improperly linked the DFS case to Eggleston's complaint, which, at its core, presents a substantive due process claim, and there is no relevant administrative remedy for Eggleston to exhaust. Therefore, we conclude that the district court erred by dismissing[8] Eggleston's § 1983 civil rights claim for failure to exhaust administrative remedies.[9]

*The district court erred by dismissing Eggleston's state law tort claims*

Eggleston next argues that the district court erred by dismissing his state tort IIED and defamation claims based on the failure to exhaust administrative remedies. Stuart responds that because Eggleston's state law tort claims are related to DFS's finding of child maltreatment, he must first exhaust his administrative remedies.

---

[8]In light of our decision, the parties' arguments regarding NRCP 12 and the affidavit are moot, and we need not consider them. *See Edwards v. City of Reno*, 45 Nev. 135, 143, 198 P. 1090, 1092 (1921) ("Appellate courts do not give opinions on moot questions or abstract propositions.").

[9]We recognize the complaint includes language that appears to reference DFS's finding of child maltreatment and administrative remedies, suggesting the claim may be an administrative one, but we conclude the heart of the complaint is a § 1983 action. The district court may address the extraneous language upon remand.

Eggleston's state law tort claims do not implicate any administrative process. "Any preliminary, procedural or intermediate act or ruling by an agency in a contested case is reviewable if review of the final decision of the agency would not provide an adequate remedy." NRS 233B.130(1). NRS 432B.317(1) provides for the administrative appeal of the substantiation of the agency's report of abuse or neglect and "the agency's intention to place the person's name in the Central Registry." Where an agency is "without authority to award damages caused by defamation[,] . . . the doctrine of exhaustion of administrative remedies is not applicable." *Ambassador Ins. Corp. v. Feldman*, 95 Nev. 538, 539, 598 P.2d 630, 631 (1979).

Here, the district court dismissed all of Eggleston's tort claims based on failure to exhaust administrative remedies. But to the extent that Eggleston's IIED and defamation claims rest on his allegations that he was forced to sign a temporary guardianship over his children, exhaustion is not required because, as explained above, these allegations do not arise from an administrative process. Moreover, the exhaustion doctrine does not preclude Eggleston's defamation claim because the agency is unable to grant the damages he seeks. *See* NRS 233B.130(1); *Ambassador Ins. Corp.*, 95 Nev. at 539, 598 P.2d at 631. Finally, the exhaustion doctrine does not apply to the claims against the Callahans because they are not an administrative agency. *See Benson v. State Engineer*, 131 Nev. 772, 777, 358 P.3d 221, 224 ("Ordinarily, before availing oneself of district court relief *from an agency decision*, one must first exhaust administrative remedies.")

(emphasis added). Accordingly, we conclude the district court improperly dismissed these claims.[10]

*The district court erred by disallowing punitive damages against Stuart*

Eggleston argues that the district court erred by disallowing punitive damages against Stuart.[11] Clark County and Stuart respond that the district court properly disallowed punitive damages because Eggleston sued Stuart in her official capacity.

A tort action against an employee of the State or its political subdivision "arising out of an act or omission within the scope of the person's public duties or employment" may not include punitive damages. NRS 41.035(1). To determine whether a party has been sued in his or her official or individual capacity, this court looks to the allegations of the complaint. *See N. Nev. Ass'n of Injured Workers v. Nev. SIIS*, 107 Nev. 108, 114-15, 807 P.2d 728, 732 (1991). "[C]ivil rights violations . . . are hardly descriptive of acts that may be rationally included within the prerogatives of an employee's official capacity." *Id.* at 115, 807 P.2d at 732.

Here, Eggleston appeals from a final judgment, the district court's order dismissing Eggleston's claims. In a prior order, the district court dismissed punitive damages against Stuart, finding Stuart was immune from punitive damages because Eggleston's complaint alleged

---

[10]However, because Eggleston's state law tort claims appear to be tied, at least to some extent, to the facts of the DFS case in that they implicitly dispute the DFS's finding of child maltreatment, a stay may be appropriate here for certain claims. We therefore reverse the order dismissing these claims but remand for the district court to determine whether a stay is appropriate.

[11]Eggleston disputes the district court's dismissal of the request for punitive damages only as to Stuart on appeal, so we affirm the district court's dismissal of punitive damages against Clark County.

Stuart was acting within the scope of her employment with the exception of "certain occasions" not specifically pleaded within the complaint. However, in his complaint, Eggleston alleged that Stuart arrived at his home with two police officers and forced him to sign temporary guardianship papers under the threat that he would otherwise never see his children again. Taking these allegations as true, Eggleston could prove that Stuart violated his civil rights and, therefore, that Stuart was acting in her individual capacity rather than her official capacity. In turn, Eggleston could be able to pursue punitive damages against Stuart. Therefore, we conclude that the district court erred by determining that punitive damages against Stuart were unavailable to Eggleston at this point in the case.

## CONCLUSION

Under *Patsy v. Board of Regents*, 457 U.S. 496 (1982), a party is generally not required to exhaust administrative remedies before filing a § 1983 civil rights claim. Here, the § 1983 claim is, at its core, one for substantive due process, and because the exception for procedural due process claims does not apply, the district court improperly dismissed Eggleston's § 1983 civil rights claim for failure to exhaust administrative remedies. Thus, we reverse the dismissal of Eggleston's § 1983 civil rights claim. We likewise reverse the district court's dismissal of Eggleston's state law tort claims, reverse the district court's dismissal of punitive damages

against Stuart, and remand for further proceedings consistent with this opinion. We affirm the district court's dismissal of Eggleston's § 1985 conspiracy claim and determination that punitive damages against Clark County are not available.

_____, J.
Silver

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A