138 Nev., Advance Opinion 56

IN THE SUPREME COURT OF THE STATE OF NEVADA

EDDY MARTEL, A/K/A MARTEL-RODRIGUEZ; MARY ANNE CAPILLA; JANICE JACKSON-WILLIAMS; AND WHITNEY VAUGHAN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
Appellants,
vs.
HG STAFFING, LLC; AND MEI-GSR HOLDINGS, LLC, D/B/A GRAND SIERRA RESORT,
Respondents.

No. 82161

FILED

SEP 08 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

Appeal from a final judgment in an employment matter concerning unpaid wages. Second Judicial District Court, Washoe County; Lynne K. Simons, Judge.

*Affirmed.*

Thierman Buck LLP and Joshua D. Buck, Mark R. Thierman, Joshua R. Hendrickson, and Leah L. Jones, Reno,
for Appellants.

Littler Mendelson, P.C., and Diana G. Dickinson and Montgomery Y. Paek, Las Vegas,
for Respondents.

BEFORE THE SUPREME COURT, EN BANC.

*AMENDED OPINION*

By the Court, STIGLICH, J.:

Appellants filed a class action complaint against their former employer to obtain unpaid minimum and overtime wages. For various reasons, their claims were dismissed and denied. In this appeal from the district court's orders, we clarify four matters of employment law. First, a two-year limitations period applies to appellants' wage claims. Second, a collective bargaining agreement (CBA) is valid so long as the employer and the union objectively manifest their assent to the agreement. Third, claims under NRS 608.040, which penalizes employers for failing to timely pay earned wages to former employees, cannot be utilized to recover wages that are time-barred under other statutes. And fourth, an employer that is a party to a CBA is exempt from Nevada's overtime statute, NRS 608.018, when the CBA provides overtime in a manner different from the statute. Because the district court adhered to this law in its orders and appellants failed to show a genuine issue of material fact, we affirm.

*FACTS AND PROCEDURAL HISTORY*

Between 2011 and 2015, appellants Eddy Martel, Mary Anne Capilla, Janice Jackson-Williams, and Whitney Vaughan (collectively, the Martel employees) worked at the Grand Sierra Resort (GSR) in Reno. Their employers, respondents HG Staffing, LLC, and MEI-GSR Holdings, LLC (collectively, HG Staffing), own and operate the GSR. All four Martel employees allege that during their employment they were required to complete tasks—such as attending meetings or classes, getting into uniform, or reconciling cash amounts—without pay. The Martel employees

 

further allege that similarly situated employees were not paid for completing the same tasks. Employees at the GSR are generally members of the Culinary Workers Union Local 226 (the Culinary Union), which maintains a CBA with HG Staffing.

In 2016, the Martel employees filed a putative class action asserting four claims. They alleged that HG Staffing failed to pay them for the work they completed in violation of (1) NRS 608.016 (requiring an employer to pay wages for each hour worked); (2) the Minimum Wage Amendment (MWA) of Nevada's Constitution, Nev. Const. art. 15, § 16 (requiring employers to pay employees a minimum hourly wage); (3) NRS 608.018 (requiring an employer to pay overtime wages); and (4) NRS 608.020 through NRS 608.050 (requiring an employer to timely pay a former employee their earned wages).

In the aggregate, the district court issued three orders in HG Staffing's favor that the Martel employees now challenge: (1) an order granting in part HG Staffing's motion to dismiss, (2) an order granting HG Staffing's motion for summary judgment, and (3) a clarification order explaining that the previous order for summary judgment extended to Jackson-Williams's individual claims. The procedural history underlying each of these orders is discussed below. In sum, all claims asserted by the Martel employees were resolved in favor of HG Staffing and did not proceed to trial. This appeal followed.

## DISCUSSION

*The district court did not err by granting in part HG Staffing's motion to dismiss*

"A dismissal for failure to state a claim pursuant to NRCP 12(b)(5) is reviewed de novo." *Eggleston v. Stuart*, 137 Nev., Adv. Op. 51, 495 P.3d 482, 487 (2021). "A decision to dismiss a complaint under NRCP 12(b)(5) is rigorously reviewed on appeal with all alleged facts in the complaint presumed true and all inferences drawn in favor of the complainant." *Id.* Further, "[w]hen the facts are uncontroverted, . . . the application of a statute of limitations to bar a claim is a question of law that this court reviews de novo." *JPMorgan Chase Bank, Nat'l Ass'n v. SFR Invs. Pool 1, LLC*, 136 Nev. 596, 598, 475 P.3d 52, 55 (2020).

*A two-year limitations period applies to the Martel employees' claims arising under NRS Chapter 608*

Collectively, the Martel employees worked at the GSR from 2011 to 2015. Relevant to our statute-of-limitations analysis, it is undisputed that the Martel employees ceased working at the GSR after the following dates: June 2013 (Vaughan), September 2013 (Capilla), June 2014 (Martel), and December 2015 (Jackson-Williams). The Martel employees filed their complaint on June 14, 2016. As noted, they asserted causes of action under NRS 608.016, NRS 608.018, and NRS 608.020 through NRS 608.050. HG Staffing moved to dismiss all claims that accrued before June 14, 2014, on the ground that they were subject to a two-year limitations period. The district court agreed and dismissed all claims asserted by Vaughan and Capilla, all but one day of Martel's claims, and all but 18 months of Jackson-Williams's claims.

The Martel employees argue that the district court erred by dismissing the foregoing statutory claims because they are subject to a

SUPREME COURT
OF
NEVADA

(O) 1947A

three-year limitations period. They argue that NRS 608.260, which governs claims for statutory minimum wages, expressly provides that an action must be brought within two years, whereas the other wage statutes are silent in this regard. Thus, they argue that NRS 11.190(3)(a)'s three-year limitations period for statutorily created causes of action applies. HG Staffing, also pointing to NRS 608.260, asserts that a two-year limitations period applies to the Martel employees' claims under the doctrine of analogous limitations. We agree with HG Staffing.

While we previously held that claims under NRS 608.016, NRS 608.018, and NRS 608.020 through 608.050 can be asserted as private causes of action, *see Neville v. Eighth Judicial Dist. Court*, 133 Nev. 777, 782-83, 406 P.3d 499, 504 (2017), we have yet to address which limitations period applies to claims brought under these statutes. We now clarify that the Martel employees' claims under these statutes are governed by a two-year limitations period under the doctrine of analogous limitations, which provides that "when a statute lacks an express limitations period, courts look to analogous causes of action for which an express limitations period is available either by statute or by case law." *Perry v. Terrible Herbst, Inc.*, 132 Nev. 767, 770-71, 383 P.3d 257, 260 (2016) (alteration omitted) (internal quotation marks omitted), *superseded by statute as stated in U.S. Bank, N.A. v. Thunder Props., Inc.*, 138 Nev., Adv. Op. 3, 503 P.3d 299 (2022).

In *Perry*, we applied the doctrine of analogous limitations and held that minimum-wage claims brought under the MWA are subject to a two-year limitations period. *Id.* at 773-74, 383 P.3d at 262. We recognized that although the MWA includes no express limitations period, such a claim "remains most *closely analogous* to one statute, NRS 608.260, which

SUPREME COURT
OF
NEVADA

(O) 1947A

[expressly] carries a two-year limitations period."[1] *Perry*, 132 Nev. at 773, 383 P.3d at 262 (emphasis added); *see also* Nev. Const. art. 15, § 16(B) (omitting a limitations period). This is because a minimum-wage claim under the MWA "closely resembles, if it is not in fact, an action for back pay under NRS 608.260." *Perry*, 132 Nev. at 771, 383 P.3d at 260.

The doctrine of analogous limitations, however, was recently superseded by statute. *See Thunder Props.*, 138 Nev., Adv. Op. 3, 503 P.3d at 304 n.3 (citing 2021 Nev. Stat., ch. 161, § 2, at 723-24 (amending NRS 11.220)). Yet, as we explained, this statutory amendment applies only prospectively. *Id.*; *see* 2021 Nev. Stat., ch. 161, § 3, at 724 ("The amendatory provisions of this act apply to an action commenced on or after the effective date of this act."). Thus, claims that were commenced before the 2021 amendatory provisions of NRS 11.220 became effective—such as the Martel employees' claims—are still subject to the doctrine of analogous limitations.

Having considered the parties' arguments, we conclude that the district court properly applied the doctrine of analogous limitations and that a two-year limitations period applies to the Martel employees' statutory claims. A two-year limitations period creates consistent application of the law, chiefly because "NRS 608.115 requires employers to maintain an employee's record of wages for [only] two years." *Perry*, 132 Nev. at 773, 383 P.3d at 262. Like the analysis in *Perry*, if we accepted the Martel employees' invitation to apply a three-year limitations period to this dispute, "an employee could bring a claim after the employer is no longer

---

[1]NRS 608.260(1) provides that, "[i]f any employer pays any employee a lesser amount than the minimum wage set forth in NRS 608.250[,] . . . the employee may, at any time within 2 years, bring a civil action against the employer."

legally obligated to keep the record of wages for the employee."[2] *Id.* Thus, uniformity of law requires the application of a two-year limitations period to the Martel employees' claims under NRS 608.016, NRS 608.018, and NRS 608.020 through 608.050.

The Martel employees' claims under NRS 608.016 are similar to back-pay claims under NRS 608.260 because they both seek to recover unpaid wages. Further, their claims are analogous to claims under the MWA because, if an employee is not paid wages, they have not received the minimum wage. *See* Nev. Const. art. 15, § 16(A) ("Each employer shall pay a wage to each employee of *not less* than the hourly rates set forth in this section." (emphasis added)). Because the Martel employees are seeking wages that were allegedly not paid, i.e., they received less than the minimum wage, they are functionally asserting claims under NRS 608.260 and the MWA, both of which are governed by a two-year limitations period. Thus, we discern no reason to depart from *Perry*.[3]

---

[2]At oral argument before this court, the Martel employees argued that federal law allows employees to assert claims for unpaid wages after the employer's record-keeping obligation has expired. Thus, they contend that the record-keeping benefit described by *Perry* is not dispositive to our analysis. This argument was not included in the Martel employees' briefs, so we decline to consider it. *See Rives v. Farris*, 138 Nev., Adv. Op. 17, 506 P.3d 1064, 1071 n.6 (2022) (explaining that we need not address arguments "raised for the first time at oral argument").

[3]The Martel employees commenced this lawsuit in 2016, so we need not decide which limitations period applies to claims under NRS Chapter 608 that were commenced after the 2021 amendatory provisions of NRS 11.220 became effective. *See* 2021 Nev. Stat., ch. 161, §§ 3-4, at 724.

In sum, we conclude that the district court correctly applied a two-year limitations period to the Martel employees' claims.[4] We therefore affirm the district court's decision to dismiss, in relevant part, their claims as time-barred.

*Summary judgment was appropriate*

"A district court's decision to grant summary judgment is reviewed de novo." *A Cab, LLC v. Murray*, 137 Nev., Adv. Op. 84, 501 P.3d 961, 971 (2021). "Summary judgment is proper if the pleadings and all other evidence on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted). "All evidence [is] viewed in [the] light most favorable to the nonmoving party." *Id.* (internal quotation marks omitted).

The Martel employees raise four arguments regarding the district court's summary judgment order. They assert that the district court erred by concluding that (1) the CBA between the Culinary Union and HG Staffing was valid, (2) the individual Martel employees lacked standing to represent Culinary Union members in a putative class-action lawsuit, (3) Martel was not entitled to relief under NRS 608.020 through NRS 608.050, and (4) the CBA provided otherwise for overtime such that it was exempt from NRS 608.018. We address the Martel employees' arguments as follows.

---

[4]Given that MWA claims also have a two-year limitations period, the district court correctly dismissed the Martel employees' time-barred MWA claims consistent with the foregoing analysis.

 

*The CBA is valid because it was ratified by the Culinary Union*

As noted, HG Staffing and the Culinary Union were parties to a CBA that governed employees at the GSR. Several issues turn on whether this CBA was valid, which the parties dispute.

The CBA, which the Martel employees refer to as the "redline draft," is unsigned and omits HG Staffing as a party. Instead, the CBA lists as parties to the agreement the Culinary Union and Worklife Financial, Inc., the former owner of the GSR. The CBA also contains redlines showing edits.[5] And although it states that it is effective between "2010-20," it does not contain any date showing when the Culinary Union accepted it. The district court concluded that the CBA was valid because *all* evidence in the record showed that the Culinary Union ratified the CBA.

The Martel employees contend that the district court erred because the CBA is unsigned, undated, and does not list HG Staffing as a party to the agreement. They further argue that the edits on the CBA show that it was not a final agreement. Thus, they contend that a genuine issue of material fact remains regarding whether the CBA was a binding agreement. HG Staffing argues that the CBA is valid because the Culinary Union ratified it. We disagree with the Martel employees.

Unlike a typical written agreement, the "technical rules of contract [formation] do not control whether a [CBA] has been reached." *Pepsi-Cola Bottling Co. v. NLRB*, 659 F.2d 87, 89 (8th Cir. 1981). Further, a CBA need not be signed or unexpired to be valid. *Line Constr. Benefit*

---

[5]Although the Martel employees point to other versions of the CBA, we do not analyze them because all evidence in the record shows that HG Staffing and the Culinary Union were operating under the redlined CBA at the time the Martel employees worked at the GSR.

*Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 581 (7th Cir. 2010). Instead, the validity of a CBA "rest[s] ultimately on the principle of mutual assent," *Operating Eng'rs Pension Tr. v. Gilliam*, 737 F.2d 1501, 1503 (9th Cir. 1984), and "[u]nion acceptance of an employer's final offer [for a CBA] is all that is necessary to create a contract," *Warehousemen's Union Local No. 206 v. Cont'l Can Co.*, 821 F.2d 1348, 1350 (9th Cir. 1987) (explaining that courts look no further if parties objectively manifest assent to a CBA).[6] Thus, even if the CBA does not strictly adhere to contractual formalities, it is valid if evidence shows that the employer and the union objectively manifested assent to the agreement.[7]

Here, as the district court concluded, the Culinary Union objectively manifested assent to the CBA because (1) a Culinary Union representative testified at an arbitration hearing that the parties ratified it in November 2011, (2) the Culinary Union filed grievances and conducted arbitration under the CBA, and (3) the Culinary Union wrote in an arbitration brief that the CBA governed and was ratified in November 2011.

---

[6]The Martel employees further argue that the CBA is invalid because, when the case was removed to federal court, the court found it to be "extremely problematic." *Martel v. MEI-GSR Holdings, LLC*, No. 3:16-cv-00440-RJC-WGC, 2016 WL 7116013, at *4 (D. Nev. Dec. 6, 2016). While recognizing that a CBA need not be signed to be enforceable and that the Culinary Union conducted grievances under the redlined CBA, the federal court ultimately declined to address whether the CBA was valid and remanded the case on other grounds. *Id.* at *4, *7.

[7]The Martel employees also argue that the sale of the GSR caused the CBA to expire. As noted, however, a CBA need not be unexpired to be valid. *Line Constr.*, 591 F.3d at 581. Because the Culinary Union ratified the CBA, we disagree that the CBA's purported expiration necessarily rendered it invalid. Nothing in the record shows that the Culinary Union or HG Staffing acted as if the CBA had expired. Thus, this argument is meritless.

Supreme Court
of
Nevada

(O) 1947A

10

Moreover, GSR's Human Resources Director stated in a declaration that the CBA covered the named employees. This fact objectively shows that, after HG Staffing purchased the GSR, it offered to be bound by the redline CBA that was already in existence. In sum, this evidence shows that HG Staffing and the Culinary Union objectively manifested assent to be bound by the CBA. The Martel employees point to no evidence in the record to show that the Culinary Union repudiated or did not ratify the CBA.

Therefore, because the Martel employees have not cited to any evidence in the record—below or on appeal—to show that the CBA was not ratified, there is no genuine issue of material fact.[8] We therefore affirm the district court's conclusion that the CBA was valid.

*HG Staffing is entitled to summary judgment on Martel's claims arising under NRS 608.020 through NRS 608.050*

As relevant here, NRS 608.020 through NRS 608.050 collectively require employers to pay former employees their earned wages and penalize them for failing to timely do so. Martel resigned after his last shift on June 13, 2014, his final paycheck was due on June 19, 2014, and he filed his complaint on June 14, 2016. The complaint alleged that he was not paid wages pursuant to NRS 608.016 and NRS 608.018, and therefore HG Staffing was subject to the penalties set forth in NRS 608.020 through NRS 608.050 for failure to timely pay wages owed. As previously discussed, the district court correctly determined that Martel's claims under NRS 608.016 and NRS 608.018 were subject to a two-year limitations period. Given that Martel's complaint was filed two years and one day after his last shift, his

---

[8]The district court denied the Martel employees' request to extend discovery under NRCP 56(d). On appeal, they do not challenge the denial of that motion.

 

claims under NRS 608.016 and NRS 608.018 were time-barred. The district court therefore granted summary judgment on Martel's claims under NRS 608.020 through NRS 608.050 after concluding they were derivative of his time-barred claims under NRS 608.016 and NRS 608.018.

On appeal, Martel argues that his claims under NRS 608.020 through NRS 608.050 are timely.[9] Relying on NRS 608.040(1)(b), which provides for a penalty for each day up to 30 days that an employer fails to pay wages after an employee resigns, Martel alleges that claims under NRS 608.020 through NRS 608.050 accrue 30 days after the employment relationship ends. He points to evidence in the record showing that payment of his final wages was due on June 19, 2014. He argues that his claim accrued 30 days later. Martel therefore contends that he can recover wages earned under NRS 608.016 and NRS 608.018 for the entirety of his employment under NRS 608.040. We disagree with Martel.

If an employee resigns, like Martel, he or she "must be paid no later than . . . [t]he day on which the employee would have regularly been paid," or "[s]even days after the employee resigns or quits," whichever is earlier. NRS 608.030(1)-(2). The statute authorizing the imposition of penalties if an employer fails to pay a former employee earned wages is as follows:

> 1. If an employer fails to pay:
>
> (a) Within 3 days after the wages or compensation of a discharged employee becomes due; or

---

[9]NRS 608.020 and NRS 608.050 apply to discharged employees. Accordingly, because Martel resigned from his job, we limit our analysis to NRS 608.030 and NRS 608.040.

> (b) On the day the wages or compensation is due to an employee who resigns or quits,
>
> the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged until paid or for 30 days, whichever is less.

NRS 608.040(1).

The parties agree that Martel's last paycheck was due on June 19, 2014.[10] Although Martel's last wages were due on June 19, 2014, he never alleged below—or on appeal—that he failed to receive those wages.[11] Instead, he argues that he earned wages under NRS 608.016 and NRS 608.018 throughout his employment that were never paid and therefore those wages were due under NRS 608.040. In doing so, he attempts to use NRS 608.040 to avoid the statute of limitations under NRS 608.016 and NRS 608.018. As noted, however, Martel's claims under NRS 608.016 and NRS 608.018 are time-barred because he filed his complaint

---

[10]Martel argues that a claim under NRS 608.040 accrues 30 days after the employment relationship ends. "A cause of action accrues when a suit may be maintained thereon." *Clark v. Robison*, 113 Nev. 949, 951, 944 P.2d 788, 789 (1997) (internal quotation marks omitted). A claim under NRS 608.040(1)(b) accrues the day the employer fails to pay the wages or compensation due the employee under NRS 608.030 because that is the date the employee can claim the penalty. *See Accrue, Black's Law Dictionary* (11th ed. 2019) ("To come into existence as an enforceable claim or right . . . ."). The 30-day period in the statute speaks to the quantum of the penalty. Martel's accrual-date argument, however, misses the mark because NRS 608.040 cannot be utilized as a mechanism to recover time-barred wages under NRS 608.016 and NRS 608.018.

[11]The parties dispute whether NRS 608.040 applies to wages an employee incurs before the final-paycheck period. We need not address this argument because Martel's claims under NRS 608.016 and NRS 608.018 were time-barred. Thus, as a matter of law, Martel could not recover any of these alleged damages utilizing NRS 608.040.

two years and one day after his last shift. Accordingly, Martel cannot recover time-barred wages under NRS 608.016 and NRS 608.018 by proceeding under NRS 608.040.

Because Martel did not allege that he failed to timely receive his final paycheck wages under NRS 608.040, he has not shown that a genuine issue of material fact exists. Thus, HG Staffing is entitled to judgment as a matter of law, and we affirm the district court's order granting summary judgment on Martel's claims under NRS 608.040.

*The CBA "provides otherwise" for overtime under NRS 608.018*

As relevant to this issue, NRS 608.018 sets forth certain overtime rates that employers must pay, but it provides an exemption for "[e]mployees covered by collective bargaining agreements which *provide otherwise* for overtime." NRS 608.018(3)(e) (emphasis added).

Here, Jackson-Williams had 18 months of claims that were not time-barred. The district court determined that Jackson-Williams could not assert claims under NRS 608.018 because Jackson-Williams was subject to the CBA, which "provides otherwise" for overtime such that it is exempt from Nevada's overtime statute. Jackson-Williams now argues that the CBA does not provide otherwise for overtime and is, therefore, not exempt from NRS 608.018. She argues that a CBA must provide a *premium* overtime rate to qualify for the exemption. HG Staffing argues that a CBA qualifies for the exemption if it offers overtime in a *different manner* than the statute. HG Staffing contends that the CBA provides overtime in a different manner than the statute and therefore qualifies for the exemption. We agree with HG Staffing and the district court.

We interpret a statute by its plain meaning. *Young v. Nev. Gaming Control Bd.*, 136 Nev. 584, 586, 473 P.3d 1034, 1036 (2020). We also have "jurisdiction to determine questions of statutory law that may or

 

may not fall outside of collective bargaining agreements." *Clark Cty. Sch. Dist. v. Riley*, 116 Nev. 1143, 1148, 14 P.3d 22, 25 (2000). Turning to the statutory text,

> 1. An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate set forth in NRS 608.250 works:
>
> (a) More than 40 hours in any scheduled week of work; or
>
> (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.
>
> 2. An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate set forth in NRS 608.250 works more than 40 hours in any scheduled week of work.

NRS 608.018(1)-(2). As indicated, however, subsections 1 and 2 do not apply to "[e]mployees covered by collective bargaining agreements which *provide otherwise* for overtime." NRS 608.018(3)(e) (emphasis added). The Legislature did not define the term "provide otherwise for overtime," *see id.*, and we have not yet interpreted this text.

There is limited authority to guide our analysis. California has a similar statute that excludes employees covered by a CBA from that state's overtime-wage statute "if the agreement provides *premium* wage rates." Cal. Lab. Code § 514 (West 2020) (emphasis added). "[T]he purpose of section 514 is to provide an opt-out provision which allows parties to collective bargaining agreements to provide any premium wage over the

regular rate for any overtime work . . . ." *Vranish v. Exxon Mobil Corp.*, 166 Cal. Rptr. 3d 845, 850 (Ct. App. 2014) (internal quotation marks omitted).

Unlike the California statute, NRS 608.018(3)(e) does not state that a CBA must pay *premium* overtime wage rates to qualify for the exemption. Thus, we conclude that the California statute has minimal persuasive value and instead limit our analysis to NRS 608.018(3)(e)'s language, which states that a CBA must "provide otherwise for overtime" to qualify for the exemption. The technical and ordinary meaning of "otherwise" is a different way or manner.[12] *See Otherwise, Black's Law Dictionary* (11th ed. 2019) ("In a different way; in another manner . . . ."); *see also Otherwise, Webster's Third New Int'l Dictionary* (2002) ("[I]n a different way or manner . . . ."). Therefore, under NRS 608.018(3)(e)'s plain language, we hold that a CBA qualifies for the overtime exemption so long as it provides overtime in a different way or manner than NRS 608.018(1)-(2).

The CBA here provided overtime in a different way or manner than NRS 608.018(1) because it set up an independent overtime scheme.[13] Specifically, it states in relevant part,

---

[12]The Martel employees urge us to consult legislative history to interpret NRS 608.018(3)(e). We decline to do so because the text is unambiguous. *See Wingco v. Gov't Emps. Ins. Co.*, 130 Nev. 177, 181, 321 P.3d 855, 857 (2014) (stating that we consult legislative history only when the text is ambiguous); *Galardi v. Naples Polaris, LLC*, 129 Nev. 306, 310-11, 301 P.3d 364, 367 (2013) (observing that a finding of ambiguity in a term is not necessary before consulting a dictionary definition of that term).

[13]Notably, the CBA is silent as to the overtime wage rate. Although Jackson-Williams contends that a CBA must provide premium overtime-wage rates to qualify for NRS 608.018(3)(e)'s exemption, we are unpersuaded by this argument. This is because the statute is silent on any

For purposes of computing overtime, for an employee scheduled to work five (5) days in one (1) workweek, any hours in excess of eight (8) hours in a day or forty (40) hours in a week shall constitute overtime. For an employee scheduled to work four (4) days in one (1) workweek, any hours worked in excess of ten (10) hours in a day or forty (40) hours in a week shall constitute overtime. Overtime shall be effective and paid only after the total number of hours not worked due to early outs is first subtracted from the total number of hours actually worked per shift, per workweek. Overtime shall not be paid under this Section for more than one (1) reason for the same hours worked.

The overtime scheme in the CBA departs from NRS 608.018(1)-(2) because it does not calculate an employee's ability to obtain overtime compensation based on the employee's wage. The statute, however, calculates an employee's overtime eligibility based on the employee's wage in relation to the minimum wage. In other words, an employee under the CBA can earn daily overtime regardless of whether they make more than 1 1/2 times the minimum wage. Likewise, the CBA's scheme is based on a four- or five-day workweek, whereas NRS 608.018 does not define the term workweek to include a specific number of days. While the two schemes are similar, the CBA provides overtime in a sufficiently different manner to fall within NRS 608.018(3)(e)'s exemption.

---

overtime-wage rate, and our role is to apply the statute as written. *See Holiday Ret. Corp. v. State, Div. of Indus. Relations*, 128 Nev. 150, 154, 274 P.3d 759, 761 (2012) ("It is the prerogative of the Legislature, not this court, to change or rewrite a statute."). We recognize that Jackson-Williams presents strong public policy justifications for requiring a CBA to provide premium overtime wages, but the Legislature has not adopted that policy in the current version of NRS 608.018(3)(e). We leave for the Legislature to address whether this exception should require a *premium* overtime rate.

Given that the CBA provided overtime in a different manner, Jackson-Williams's claims for unpaid overtime cannot be asserted under NRS 608.018. Because Jackson-Williams has not provided any calculation of the overtime pay to which she alleges she is specifically entitled under the CBA, no genuine issue of material fact exists, and the district court properly granted summary judgment on her claims under NRS 608.018.

*HG Staffing is entitled to summary judgment on Jackson-Williams's remaining claims*

After the district court's summary judgment order, Jackson-Williams had claims remaining under the MWA, NRS 608.016, and NRS 608.040, as well as a request for attorney fees under NRS 608.140. The district court issued a clarification order concluding that HG Staffing was entitled to summary judgment on her remaining claims because Jackson-Williams lacked standing to assert them, specifically because she failed to allege that the Culinary Union breached its duty of fair representation. On appeal, Jackson-Williams contends that the district court erred in granting summary judgment on these claims but cites no caselaw or portions of the record to show a genuine issue of material fact. As noted, a court is not required to wade through the record to find disputed material facts. *Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. 434, 438, 245 P.3d 542, 545 (2010). Accordingly, we conclude that HG Staffing is entitled to summary judgment on these claims consistent with the district court's order. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (observing that it is an appellant's responsibility to provide cogent arguments supported by salient authority).

Further, in opposition to HG Staffing's motion for summary judgment below, Jackson-Williams argued that she was entitled to wages under NRS 608.018 and NRS 608.040 but failed to argue that she was

 

entitled to wages under NRS 608.016, NRS 608.020 through NRS 608.050, or the MWA. In Jackson-Williams's motion for clarification, she provided no argument as to why her claims were still viable. Finally, reviewing Jackson-Williams's complaint, she alleged that she worked 151 hours of unpaid time and that she was owed payment for these hours based on the *overtime* rate. Yet, as we explained, the CBA here is exempt from NRS 608.018's overtime-pay scheme. In sum, we are unable to find any evidence to support the notion that Jackson-Williams demonstrated a genuine issue of material fact concerning these claims.[14]

## CONCLUSION

In sum, the Martel employees' claims under NRS 608.016, NRS 608.018, and NRS 608.020 through NRS 608.050 were correctly dismissed under a two-year limitations period. The district court's summary judgment order correctly concluded that (1) the CBA was valid; (2) claims

---

[14]Although the district court concluded that the Martel employees lacked standing to represent Culinary Union members in a class action lawsuit, and the parties urge us to address the propriety of this ruling, this issue is moot. Generally, class certification requires "that the named representatives of the putative class possess a valid cause of action." *Landesman v. Gen. Motors Corp.*, 377 N.E.2d 813, 814 (Ill. 1978). Because the Martel employees have no surviving causes of action, it is unnecessary for us to determine whether they have standing to represent a putative class of GSR employees. Further, the Martel employees point to nothing in the record to show that the class was certified. *See* NRCP 23(d)(1) (stating that a class must be certified by the district court). Thus, this issue is also moot because the class was never certified. *Cf. Sargeant v. Henderson Taxi*, 133 Nev. 196, 199, 394 P.3d 1215, 1218 (2017) (stating that class certification issues are moot if the plaintiff's claims are dismissed on a motion to dismiss or summary judgment). In light of the foregoing, we decline to address this issue.

 

under NRS 608.040 cannot be utilized to recover time-barred wages under other statutes; and (3) an employer that is a party to a CBA is exempt from the overtime scheme imposed under NRS 608.018, so long as the CBA provides overtime in a different manner than the statute. Because we discern no error from the record, we affirm.

_____, J.
Stiglich

We concur:

_____, C.J.
Parraguirre

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Silver

_____, J.
Herndon

